## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

GREAT DIVIDE WIND FARM 2,
LLC, a Delaware corporation, and

GREAT DIVIDE WIND FARM 3,
LLC, a Delaware corporation

            Plaintiffs,

v.

THERESA BECENTI AGUILAR,         Case No. 1:19-cv-99-LF-CG
CYNTHIA HALL, JEFFERSON
BYRD, VALERIE ESPINOZA, AND
STEPHEN FISCHMANN, in their
official capacities as the
Commissioners of the New Mexico
Public Regulation Commission,

            Defendants.

## DEFENDANTS' JOINT MOTION TO DISMISS
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendants Theresa Becenti Aguilar, Cynthia Hall, Jefferson Byrd, Valerie

Espinoza, and Stephen Fischmann, in their official capacities and Commissioners

of the New Mexico Public Regulation Commission, (hereinafter collectively

referred to as "NMPRC") and Defendant-Intervenor El Paso Electric Company

("EPE")[1] file this Motion to Dismiss the Complaint for Declaratory and Injunctive

Relief filed by Plaintiffs Great Divide Wind Farm 2, LLC and Great Divide Wind

---

[1] EPE is filing a Motion to Intervene concurrently with this Joint Motion to Dismiss.

Farm 3, LLC (collectively, "Great Divide") under FED. R. CIV. P. 12(b)(1) because this Court lacks subject-matter jurisdiction over Great Divide's claims.

## SUMMARY OF MOTION

1.     This action arises out of a formal complaint proceeding that was initiated at the NMPRC by Great Divide against EPE in August 2018 (the "Complaint"). *See In the Matter of the Formal Complaint of Great Divide Wind Farm 2 and Great Divide Wind Farm 3 Against El Paso Electric Company,* NMPRC Case No. 18-00268-UT, Formal Complaint (Aug. 27, 2018).   In that NMPRC proceeding, Great Divide alleged that EPE had violated the Public Utility Regulatory Policies Act of 1978 ("PURPA")[2] and Federal Energy Regulatory Commission ("FERC") regulations[3] by failing to recognize a "legally enforceable obligation" that Great Divide claimed to have created.   According to the Complaint, Great Divide's offer to sell electricity to EPE from an as-yet unbuilt wind generating facility imposed a legally enforceable obligation on EPE to purchase the entire output of that facility for a term of 30 years and to pay EPE's calculated avoided cost price for the electricity. *Id.* at 9.

---

[2]  Public Law No. 95-617 tit. II § 210, 92 Stat. 3117, 3144 (codified as amended at 16 U.S.C. § 824a-3).

[3]  The FERC regulations cited by Great Divide are codified in Title 18, Chapter 292 of the Code of Federal Regulations.

2.     EPE moved to dismiss Great Divide's Complaint on the ground that NMPRC Rule 17.9.570 NMAC ("Rule 570") imposes a PURPA purchase legally enforceable obligation on a utility only from the date the qualifying facility is interconnected to the utility's transmission and distribution system. NMPRC Case No. 18-00268-UT, El Paso Electric Company's Motion to Dismiss Complaint for Lack of Probable Cause and Memorandum of Points and Authorities (Sept. 25, 2018). Since Great Divide's proposed wind generating facility was not even built, much less interconnected to EPE's system, EPE argued that it had no legally enforceable obligation to enter into an agreement to purchase the output of the wind facility at that time. The NMPRC agreed, dismissed the Complaint without prejudice, and ruled at ¶ 19: "The Commission further finds that Great Divide ignores the plain language of Rule 570.9 [footnote 10] which expressly addresses when a utility's obligation to purchase arises. The Commission finds that the plain language of Rule 570.9 establishes that **at the point in time when a QF is ready to be interconnected, that is when a legally enforceable obligation arises.**"[4] Case No. 18-00268-UT, Final Order Dismissing Complaint at 8-9 (Nov. 7, 2018)

---

[4]  The Joint Movants have differing interpretations of Rule 570.9. The NMPRC takes the position that the utility's purchase obligation arises when the qualifying facility is ready to interconnect. EPE takes the position that Rule 570 imposes the purchase obligation from the date of interconnection. For purposes of this motion, however, the Court need not decide which interpretation is correct. It is undisputed that Great Divide was never interconnected or ready to interconnect.

(emphasis added).  After obtaining FERC's consent to file suit in federal court,[5] Great Divide filed its Complaint in this Court.

3.      Dismissal is appropriate in this instance because PURPA limits the circumstances under which a party may seek federal court review of a state regulatory authority's action.    Under PURPA, challenges to state regulatory authority rulings fall into one of two separate categories: (1) an "as-applied" claim under Section 210(g) of PURPA, 16 U.S.C. § 824a-3(g); or (2) a "failure to implement" claim under Section 210(h) of PURPA.  16 U.S.C. § 824a-3(h).  An as-applied claim involves a contention that the agency's implementation plan is unlawful as it applies to or affects an individual petitioner.  *Power Resource Grp. v. Public Utility Comm'n of Tex.*, 422 F.3d 231, 235 (5th Cir. 2005); *Mass. Inst. of Tech. v. Mass. Dep't of Pub. Utilities*, 941 F.Supp. 233, 237 (D. Mass. 1996).  In contrast, a "failure to implement" claim alleges that the state agency has failed to comply with its obligation under Section 210(f)(2) of PURPA to devise a plan that implements PURPA and FERC's PURPA-related regulations.  *Public Resource Grp.*, 422 F.3d at 233; *Greensboro Lumber Co. v. Ga. Power Co.*, 643 F.Supp. 1345, 1374 (N.D. Ga. 1986).  Although federal courts have jurisdiction over

---

[5] *Great Divide Wind Farm, 2, LLC*, 166 FERC 61,090 (Feb. 4, 2019), Notice of Intent Not to Act and Declaratory Order.

**MOTION TO DISMISS**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

"failure to implement" claims, "as-applied" claims may be asserted only in a state court. *See Power Resource Grp.*, 422 F.3d at 235.

4.      In its Complaint in this Court, Great Divide is making an "as applied" claim that may only be asserted in a state court because Great Divide does not contend that the PRC failed to implement PURPA and FERC regulations when it promulgated Rule 570.   Great Divide's argument is that the NMPRC order's dismissing Great Divide's Complaint is erroneous *as it affects Great Divide's relationship with EPE,* and the relief that Great Divide asks the Court to grant would inure solely to the benefit of Great Divide.   Moreover, the requested relief would impose an obligation only upon EPE.[6]   Those are as-applied claims under well-established PURPA precedent.   Because Great Divide has pleaded only as-

---

[6] See, Great Divide's Claim for Relief, Complaint pages 6-7 as follows: "18. EPE is obligated under PURPA regulations to purchase the power generated by GDW2 and GDW3. 18 CFR § 292.303(a) ("Each electric utility shall purchase, in accordance with §292.304, unless exempted by §292.309 and § 292.310, any energy and capacity which is made available from a qualifying facility ... Directly to the electric utility"). 19. Rates for EPE's purchases of the power produced by Scout shall be based on EPE's avoided cost. 18 CFR § 292.304; 17.9.570.9(A) & .11(A) NMAC. 20. Avoided costs are "the incremental costs to the electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, the utility would generate itself or purchase from another source." 18 C.F.R. § 292.101 (b)(6); 17.9.570.7(A) NMAC (definitions are identical in both federal and state regulations).... 24. "Avoided costs calculated at the time the obligation is incurred" means that rates based on estimated or projected avoided costs over the term of the obligation. FERC Order 69, 45 Fed. Reg. 12224 (Feb. 25, 1980) ...34. After notice and hearing, the Commission should find and order that a legally enforceable obligation exists for EPE's purchase of all of the power produced by GDW2 and GDW3 for a 30-year term commencing with each projects operational date in 2020 is created. The Commission should further order just and reasonable rates for the purchase of energy."

applied claims over which this Court has no jurisdiction, Defendants move for dismissal under Fed. R. Civ. P. 12(b)(1).

## BACKGROUND

### I.    PURPA Regulatory Context

4.    Congress enacted PURPA as part of a package of legislation meant to respond to the energy crisis of the late 1970s. *FERC v. Mississippi*, 456 U.S. 742, 757, 102 S. Ct. 2126 (1982). PURPA's stated purpose was "to reduce the dependence of electric utilities on foreign oil and natural gas, in part by encouraging development of alternative energy sources such as cogeneration and small power production facilities,"[7] which are typically referred to as "qualifying facilities" or "QFs." *Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 67 (1st Cir. 2017). To achieve the goal of promoting the developing of alternative energy sources in the late 1970s, Congress mandated that utilities purchase the output of the qualifying facilities at a an "avoided cost" price which was equal to or less than the utilities' "incremental cost of alternative electric energy."[8]

---

[7] *Power Resource Group*, 422 F.3d at 233; *see also Northern Laramie Range Alliance v. FERC*, 733 F.3d 1030, 1032 (10th Cir. 2013).

[8] 16 U.S.C. § 824a-3(b). A utility's "incremental cost of alternative electric energy" is defined by PURPA as the "cost to the electric utility of the electric energy which, but for the purchase from such cogenerator or small power producer, such utility would generate or purchase from another source." *Id.* § 824a-3(d). This rate is usually referred to as the utility's "avoided cost." *See, e.g., Allco Renewable Energy*, 875 F.3d at 67.

5.     To ensure implementation of PURPA, Congress directed FERC to prescribe "such rules as it deems necessary to encourage cogeneration and small power production."   16 U.S.C. § 824a-3(a).   FERC complied by adopting regulations implementing PURPA in 1980.   *Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of the Public Utility Regulatory Policies Act of 1978*, 45 Fed. Reg. 12214 (Feb. 25, 1980).   One of the regulations promulgated by FERC provides that qualifying facilities have the option of providing power to a purchasing utility either (i) on an "as available" basis; or (ii) pursuant to a contract or other "legally enforceable obligation."   18 C.F.R. § 292.304(d).   If the qualifying facility elects to sell on an "as available" basis, avoided costs are established at the time the energy is delivered.   *Id.*   In contrast, a qualifying facility that elects to create a legally enforceable obligation can choose to have the avoided cost calculated at the time of delivery or at the time the legally enforceable obligation is incurred.   *Id.*

6.     PURPA also directed state regulatory agencies, like the NMPRC "to adopt rules which comply with FERC's regulations and implement PURPA." *Power Resource Grp.*, 422 F.3d at 233 (citing 16 U.S.C. § 824a-3(f)); *see also Portland GE Co. v. FERC*, 854 F.3d 692, 695 (D.C. Cir. 2017) ("Subsection (f), in turn, requires state public-utility commissions to implement FERC's rules at the

local level."). In the order adopting its own regulations, FERC declined to require that the state regulatory agencies adopt the FERC regulations verbatim. To the contrary, FERC stated that it would "afford the state regulatory authorities . . . **great latitude** in determining the manner of implementation of the [FERC's] rules, provided that the manner chosen is reasonably designed to implement the requirements of FERC's regulations." 45 Fed. Reg. at 12230-31 (emphasis added). And importantly for purposes of this case, FERC has stated on numerous occasions that "it is up to the States, not [FERC], to determine the specific parameters of individual QF power purchase agreements, *including the date at which a legally enforceable obligation is incurred under State law.*" *See, e.g., West Penn Power Co.*, 71 FERC ¶ 61,153 at 16,495 (1995) (emphasis added); *Metro. Edison Co. and Penn Elec. Co.*, 72 FERC ¶ 61,015 at 61,050 (1995), Order on Clarification, 72 FERC ¶ 61,269 (1995).

7.     The NMPRC chose to implement FERC's regulations in New Mexico by adopting Rule 570, which governs cogeneration and small power production. The specific provision that governs a utility's purchase obligation under PURPA, which is Rule 570.9(A), states that the utility's obligation arises when the QF's facility is ready for interconnection and that a utility shall purchase power at the utility's avoided cost from the date of interconnection: "Each utility shall purchase

power from a qualifying facility from the date of interconnection at the utility's avoided cost." In addition, Rule 570.9(B) establishes a specific timeline that the qualifying facility must follow leading up to the date of interconnection:

> The qualifying facility shall give the utility at least sixty (60) days written advance notice to interconnect. Such notice shall specify the **date the qualifying facility will be ready for interconnection,** the date the qualifying facility will be able to commence testing, and the anticipated date of operation after testing. (Emphasis added).

## II.      FACTUAL BACKGROUND OF THIS ACTION

### A.      THE UNDERLYING PRC PROCEEDING

8.      As stated above, on August 27, 2018, Great Divide initiated the Complaint proceeding against EPE at the NMPRC. In that Complaint, Great Divide alleged that it was planning to build two 80-megawatt wind farms in Grant County, New Mexico, and that it had the right, under FERC regulations, to sell the energy from those facilities to EPE at EPE's avoided cost calculated at the time the obligation is incurred, which, according to Great Divide, was the present time. In other words, according to Great Divide, since it has purportedly committed itself to sell all of its output to EPE at the present time, EPE was required to recognize a legally enforceable obligation. *Id.* at 1 and 6. Great Divide further alleged that it had the right to elect whether: (i) to sell the energy on an "as available" basis, which meant that Great Divide would receive EPE's avoided cost calculated at the moment of delivery, or (ii) to create a legally enforceable obligation, which would

require EPE to purchase the output of the facilities for a term of 30 years, with the price set at the beginning of the term. *Id.* at 7. Great Divide's Complaint was in actuality a request for a declaratory order, in so far as it asked the NMPRC to declare that a legally enforceable obligation exists at this time and to "order just and reasonable rates" for the purchase of Great Divide's energy. *Id.* at 6 and 9.[9]

9.     EPE moved to dismiss Great Divide's complaint on the grounds that Rule 570 requires a utility to purchase energy from a qualifying facility from the date of interconnection, and that Great Divide's proposed wind generating facilities were not interconnected to EPE's grid.  Rule 570.9 and NMPRC Case No. 18-00268-UT, El Paso Electric Company's Motion to Dismiss Complaint for Lack of Probable Cause and Memorandum of Points and Authorities (Sept. 25, 2018). Indeed, as EPE noted, Great Divide's own pleadings established that the wind facilities would not be operational until sometime in 2020. Pl's. Complaint at 8-9.

**B.     THE NMPRC ORDER**

10.    On November 7, 2018, the NMPRC issued an order dismissing Great Divide's Complaint without prejudice.  NMPRC Case No. 18-00268-UT, Final Order Dismissing Complaint at 8-9 (Nov. 7, 2018).  In that order, the NMPRC

---

[9] According to Great Divide's Complaint: "15. Because the law is clear that the QF's commitment triggers the creation of a legally-enforceable purchase obligation, not the preferences of the utility, the Commission must find that the matters presented herein are ripe for adjudication." Page 6.

concluded that Great Divide's complaint "should be dismissed, [without prejudice] according to the plain language of Rule 570.9." *Id.* at 6.  The NMPRC also relied on its 2016 decision in very similar factual pattern case brought by a qualifying facility called Western Water and Power Production, Limited, LLC ("WWPP"), which had also argued it should be allowed to impose a legally enforceable obligation on a utility even before the generating facility was built, and similarly not "ready for interconnection." *Id.*  Rule 570.9. Finally, in response to Great Divide's arguments about FERC's view of legally enforceable obligations, the NMPRC noted that WWPP had also filed a Petition with FERC requesting FERC to find that Rule 570 was contrary to PURPA and the FERC regulations, and, instead, FERC had not done so and issued a Notice of Intent Not to Act in the WWPP FERC case. *Id.*

### C.   THE FERC PROCEEDING

11.   On December 6, 2018, Great Divide filed a petition for enforcement with FERC in accordance with 16 U.S.C. § 824a-3(h)(2)(B). *Great Divide Wind Farm 2, LLC*, Docket No. EL19-25-000, Petition for Enforcement Pursuant to Section 210(h) of the Public Utility Regulatory Policies Act of 1978 (Dec. 6, 2018).  In that pleading, Great Divide asked FERC "to initiate an enforcement action against the [NMPRC] for its failure to implement PURPA consistent with

federal law and the Commission's regulations." *Id.* According to Great Divide, the NMPRC's "interpretation" of Rule 570.9 was contrary to federal law. *Id.*

12.    On February 4, 2019, FERC issued a Notice of Intent Not to Act, as it did in the WWPP case, and Declaratory Order with respect to Great Divide's petition. In that order, FERC declined to rule that NMPRC Rule 570 was contrary to FERC regulations and PURPA, declined to initiate an enforcement action against the PRC, and stated that "Great Divide may itself bring an enforcement action against the New Mexico Commission in the appropriate court."[10]

### D.   THE COMPLAINT IN THIS PROCEEDING

13.    On February 6, 2019, Great Divide filed its Complaint for Declaratory and Injunctive Relief in this Court seeking relief against the NMPRC Commissioners in their official capacities. In that Complaint, Great Divide asked the Court to declare that the NMPRC's order "violates PURPA and FERC regulations insofar as it places improper obligations on Plaintiffs before EPE is obligated to enter into a contract or other legally enforceable obligation to purchase the output of the Plaintiffs' QFs for the specified term." Pl.'s Complaint at 13.

---

[10] *Great Divide Wind Farm 2, LLC*, 166 FERC ¶ 61,090 at ¶ 2 (Feb. 4, 2019). As part of its order, FERC also declared that its prior decision not to initiate an enforcement action against the PRC in the WWPP case should not be construed to mean that FERC accepted or agreed with any substantive determination by the PRC in the WWPP case. *Id.* at ¶ 20 ("The Commission's [FERC's] silence is not evidence of a Commission determination on the merits of the parties' arguments. That is, the Commission has not ruled on the issues, and such issues may not be considered as having been so decided as to constitute precedents.").

Great Divide also requested that the Court enjoin (i.e., *require*) the NMPRC Commissioners:

> to issue a new order implementing FERC's rules under PURPA in a manner consistent with federal law, ruling that Plaintiffs need not construct their Projects and obtain signed interconnection agreements as a prerequisite to the creation of a legally enforceable obligation, and implementing a methodology for determining avoided energy costs calculated at the time the obligation is incurred or offering to resolve disputes between Plaintiffs and EPE regarding the calculation of an avoided cost rate.

*Id.*

14.    Contrary to Great Divide's claims, the Final Order and Rule 570 do not require that a QF "obtain signed interconnection agreements" as a prerequisite to the establishment of a legally enforceable obligation. Rather the Final Order and Rule 570 only require that the QF be "ready" to be interconnected.

15.    EPE moved to intervene on March 1, 2019. On that same day, EPE and the NMPRC Commissioner Defendants filed this Motion to Dismiss and Memorandum of Law in Support Thereof.

## **MOTION TO DISMISS STANDARDS**

16.    A motion to dismiss under FED. R. CIV. P. 12(b)(1) challenges subject matter jurisdiction. "Federal courts are courts of limited jurisdiction, and as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). As the Supreme Court has noted, jurisdiction is a

threshold question that a federal court must address before reaching the merits of a statutory question, even if the statutory question is more easily resolved. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-94, 118 S. Ct. 1003 (1998). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction, *Montoya*, 296 F.4d at 955, and statutes conferring subject matter jurisdiction on federal courts are to be strictly construed. *F&S Const. Co. v. Jensen*, 377 F.2d 160, 161 (10th Cir. 1964). Mere conclusory allegations of jurisdiction are not sufficient. *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

17.    Motions to dismiss under Rule 12(b)(1) "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). When reviewing a facial attack on a complaint, the court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In contrast, when reviewing a factual attack on a complaint, the court may not presume the truthfulness of the complaint's factual allegations. *Id.* at 1003. A court has wide discretion to allow affidavits, other documents, and a

limited evidentiary hearing to resolve disputed jurisdictional facts under FED. R. CIV. P. 12(b)(1). *Id.*

## ARGUMENT

I.   **GREAT DIVIDE'S CLAIMS ARE AS-APPLIED CLAIMS OVER WHICH THIS COURT HAS NO JURISDICTION, AND THEREFORE THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1).**

18.   As the First Circuit has noted, "Sections 210(g)-(h) of PURPA 'create an overlapping scheme of federal and state judicial review of state regulatory action taken pursuant to PURPA.'" *Allco Renewable Energy*, 875 F.3d at 67 (quoting *Greenwood ex rel. Estate of Greenwood v. N.H. Public Util. Comm'n*, 527 F.3d 8, 10 n.1 (1st Cir. 2008)). PURPA authorizes FERC to bring enforcement actions against state regulatory authorities in federal court, and it also allows two types of private enforcement actions: (1) "as-applied" claims under Section 210(g) of PURPA, which must be brought in state court; and (2) "failure to implement" claims under Section 210(h) of PURPA, which must be brought in federal court. *Allco Renewable Energy*, 875 F.3d at 68 ("While federal district courts have exclusive jurisdiction over implementation challenges, only state courts may hear as-applied challenges."); *see also Portland GE Co. v. FERC*, 854 F.3d at 698 ("State-based adjudication serves as the mainstay for enforcing PURPA rights.");

*id.* ("PURPA gives FERC and the federal courts a separate and more limited role.").

19. An implementation claim involves the contention that the state regulatory authority has failed to develop a lawful implementation plan under 16 U.S.C. § 824a-3(f). *Power Resource Grp.*, 422 F.3d at 235; *Exelon Wind I, LLC v. Nelson*, 766 F.3d 380, 388 (5th Cir. 2014). In contrast, an as-applied claim involves the contention that the state agency's implementation plan is unlawful as it applies to or affects an individual petitioner. *Power Resource Grp.*, 422 F.3d at 235; *Exelon Wind*, 766 F.3d at 388.

20. Great Divide has pleaded only as-applied claims in this proceeding because the Complaint challenges the NMPRC order solely as it pertains to Great Divide's particular circumstances. For example, Great Divide's prayer for relief asks the Court to declare that the PRC's order violates PURPA and FERC regulations "insofar as it *places improper obligations on Plaintiffs* before EPE is obligated to enter into a contract or other legally enforceable obligation to purchase the output of Plaintiffs' QFs for the specified term." Pl.'s Complaint at 13 (emphasis added). In addition, the Complaint asks the Court to issue an injunction requiring the NMPRC to issue a new order "ruling that Plaintiffs need not construct their Projects and obtain signed interconnection agreements as a

prerequisite to the creation of a legally enforceable obligation, and implementing a methodology for determining avoided energy costs calculated at the time the obligation is incurred or offering to resolve disputes between Plaintiffs and EPE regarding the calculation of an avoided cost rate."[11]  *Id.*  These claims are specific to the circumstances of Great Divide, the relief requested would benefit only Great Divide, and the requested relief would affect only EPE.  The facts alleged in Great Divide's Complaint demonstrate that this is an as-applied challenge, and this Court lacks jurisdiction to decide them.  *Cf. Power Resource Grp. v. Klein*, 2004 U.S. Dist. LEXIS 28820 (W.D. Tex., Feb. 18, 2004) (stating that "the federal court has jurisdiction to force a state to implement QF regulations under PURPA if the state regulatory authority has failed to do so, but not to settle disputes about how a state-approved rate or regulation might apply to an individual QF").

21.    Indeed, Great Divide essentially admits that its claims are as-applied challenges.  In the Complaint, Great Divide acknowledges that the NMPRC has implemented PURPA and the FERC regulations by promulgating Rule 570.  Pl's Complaint at 8 ("The NMPRC implements PURPA and FERC's regulations

---

[11] As stated above, neither the Final Order nor Rule 570.9 require that require that a QF "obtain signed interconnection agreements" as a prerequisite to the establishment of a legally enforceable obligation.  Rather the Final Order and Rule 570 only require that the QF be "ready" to be interconnected.

MOTION TO DISMISS
AND MEMORANDUM OF LAW IN SUPPORT THEREOF

pursuant to Title 17, Chapter 9, Part 570 of the New Mexico Administrative Code

('Rule 570')"). Therefore, to mount a valid implementation claim, Great Divide

would need to challenge the lawfulness of Rule 570, and it has not done so. Great

Divide chooses instead to promote the fiction that Rule 570 is inapplicable in this

case because it allegedly does not address the "concept of a PURPA-mandated

legally enforceable obligation." *Id.* But in fact Rule 570 directly addresses the

issue that Great Divide asks the Court to adjudicate, which is when a utility's

obligation to purchase a qualifying facility's output arises under state law. As

explained earlier, Rule 570.9 states that the utility's purchase obligation arises "the

**date the qualifying facility will be ready for interconnection.**" That the phrase

"legally enforceable obligation" does not appear in Rule 570 is of no moment. The

phrase "legally enforceable obligation" refers to the utility's obligation to purchase

a qualifying facility's output, and the plain language of Rule 570.9 defines when a

utility's obligation to purchase a qualifying facility's output arises under New

Mexico law. Thus, Rule 570 prescribes the earliest date on which a legally

enforceable obligation could arise under New Mexico law which is when the QF is

ready to be interconnected. As the Final Order, ¶ 24, page 8 stated: "Lastly, the

Commission finds that Rule 570 and WWPP are proper examples of a state

exercising its discretion appropriately when it required QFs to be ready to be

interconnected before a utility's purchase obligation arises. The Commission finds that Great Divide's GW 2 and GW3 are not currently ready to be interconnected to EPE's transmission and distribution system, and, therefore, there is not a legally enforceable obligation."

22.    In cases similar to this one, other courts have concluded that the qualifying facilities' claims were as-applied challenges that had to be brought in state court. For example, in *Exelon Wind,* the Fifth Circuit noted that the majority of the qualifying facility's requests for relief focused on an order issued by the Public Utility Commission of Texas ("PUCT"), rather than the rule that the PUCT had promulgated to implement PURPA. *Exelon Wind,* 766 F.3d at 390. Those attacks on the PUCT order were as-applied challenges, said the court, and therefore could not be maintained in federal court. *Id.* So it is with Great Divide's challenge to the PRC's order. In *Exelon Wind,* the Fifth Circuit also concluded that the qualifying facility had asserted as-applied challenges by requesting that the PUCT be required to reopen the underlying proceedings for further consideration and that it be enjoined from enforcing its prior order. *Id.* Those forms of relief are essentially identical to the relief that Great Divide seeks in this case.

23.    Similarly, in one of the *Power Resource Grp.* cases, the qualifying facility asked the federal district court to declare that the PUCT's actions violated

PURPA insofar as they affected the qualifying facility. *Power Resource Grp. v. Klein*, 2004 U.S. Dist. LEXIS 28820 at *23 (W.D. Tex. 2004). The qualifying facility also requested injunctive relief requiring the PUCT to promulgate new regulations and to reconsider the qualifying facility's petition under those new regulations. *Id.* The district court held that those requests for relief, which are indistinguishable Great Divide's requests for relief, "state an 'as applied' claim, which this Court has no jurisdiction to hear." *Id.*[12] Great Divide's requests for relief are also as-applied claims that this Court has no jurisdiction to hear.

## II.   THE GENERAL GRANT OF JURISDICTION IN 28 U.S.C. § 1331 CANNOT OVERRIDE THE SPECIFIC GRANTS OF JURISDICTION IN PURPA.

24.    Great Divide contends that the Court has "subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action brings claims arising under federal law." Pl's Complaint at 4. It is well-settled, however, that 28 U.S.C. § 1331 cannot confer federal court jurisdiction if a more specific statutory provision confers exclusive jurisdiction elsewhere.[13]   Because PURPA vests

---

[12] The *Power Resource Grp.* court found that the qualifying facility had pleaded one implementation claim—whether the PUCT's rule governing the date on which a legally enforceable obligation arose violated PURPA. *Id.* at 22. As explained earlier, however, Great Divide has challenged Rule 570 as it is applied to Great Divide.

[13] *See, e.g., Pejepscot Indus. Park v. Maine Cent. R.R. Co.*, 215 F.3d 195, 200 n.3 (1st Cir. 2000) (stating that the jurisdiction granted by 28 U.S.C. § 1331 can be precluded by another, more specific statute); *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 990 (4th Cir. 1990) ("[A] more specific statutory provision conferring exclusive jurisdiction elsewhere would suspend the application of § 1331."); *Connors v. Amax Coal Co.*, 858 F.2d 1226, 1229 (7th Cir.

exclusive jurisdiction over as-applied claims in the state courts, Great Divide's reliance on 28 U.S.C. § 1331 as a basis for jurisdiction in federal court is misplaced.

## III.   THE DECLARATORY JUDGMENT ACT DOES NOT PROVIDE AN INDEPENDENT BASIS FOR FEDERAL COURT JURISDICTION.

25.   It is unclear whether Great Divide is contending that the Declaratory Judgment Act provides an independent basis for jurisdiction in this Court,[14] but if so, that contention is wrong.  The Declaratory Judgment Act does not provide a federal court with an independent basis for exercising subject-matter jurisdiction. *Skelly Oil Co. v. Phillips Oil Co.*, 339 U.S. 667, 671, 70 S. Ct. 876 (1950); *Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012).

## CONCLUSION AND PRAYER

For the reasons set forth in this Motion, Defendants Theresa Becenti Aguilar, Cynthia Hall, Jefferson Byrd, Valerie Espinoza, and Stephen Fischmann, in their official capacities as Commissioners of the NMPRC, and EPE pray that the

---

1988) ("To establish a cause of action in district court under section 1331 the trustees must show first that their action against Amax 'arises under' ERISA or federal common law and second that section 1331 jurisdiction is not preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere.").

[14] Great Divide asserts that the Court is empowered to grant declaratory relief under 28 U.S.C. § 2201, but it does not expressly invoke that statute as a basis for jurisdiction in this case. Pl.'s Complaint at 6.

Court enter an order granting this Motion to Dismiss under FED. R. CIV. P. 12(b)(1)

and dismissing each of Great Divide's claims without prejudice.   Defendants

further request any other relief to which they may be justly entitled.

Dated:   March 1, 2019.

Respectfully submitted,

_____

Judith Amer, Associate General Counsel
New Mexico Public Regulation Commission
1120 Paseo De Peralta
PERA Building
P.O. Box 1269
Santa Fe, NM 87504
Phone: 505-827-6074
Fax: 505-827-4194
Judith.amer@state.nm.us
ATTORNEY FOR NEW MEXICO
PUBLIC REGULATION COMMISSION


Carol A. Clifford                         Ron H. Moss
Jerry Todd Wertheim                       Winstead PC
Jones, Snead, Wertheim &                  401 Congress Avenue, Suite 2100
Clifford, P.A.                            Austin, Texas 78701
P.O. Box 2228                             Phone: (512) 370-2867
Santa Fe, NM 87504                        Fax: (512) 370-2850
Phone: (505) 982-0011                     rhmoss@winstead.com
Fax: (505) 989-6288
carol@thejonesfirm.com
todd@thejonesfirm.com
        ATTORNEYS FOR EL PASO ELECTRIC COMPANY

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for Plaintiffs Great Divide Wind

Farm 2, LLC and Great Divide Wind Farm 3, LLC.  Plaintiffs Great Divide Wind

Farm 2, LLC and Great Divide Wind Farm 3, LLC oppose this motion to dismiss.

_____
Judith Amer
Associate General Counsel, NMPRC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Joint Motion to

Dismiss was electronically served on all counsel of record this 1st day of March,

2019 as follows:

_____
Judith Amer
Associate General Counsel, NMPRC

Jason Marks Law LLC.
lawoffice@jasonmarks.com
Orrick, Herringto & Sutcliffe, LLP
Jonathan Guy
Jguy@orrick.com

**MOTION TO DISMISS**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**