**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GREAT DIVIDE WIND FARM 2 LLC, a
Delaware corporation, and GREAT DIVIDE
WIND FARM 3 LLC, a Delaware corporation,

      Plaintiffs,

vs.                                        No. CIV 19-0099 JB\CG

THERESA BECENTI AGUILAR;
CYNTHIA HALL; JEFFERSON BYRD;
VALERIE ESPINOZA, and STEPHEN
FISCHMANN, in their official capacities
as the Commissioners of the New Mexico
Public Regulation Commission,

      Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**[1]

---

[1]This Memorandum Opinion and Order disposes of: (i) Defendant Theresa Becenti Aguilar's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 19); (ii) Defendant Jefferson Byrd's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 20); (iii) Defendant Valerie Espinoza's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 21); (iv) Defendant Stephen Fischmann's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 22); and (v) Defendant Cynthia Hall's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 23).

The Court discerns no differences between Aguilar's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 19), Byrd's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 20), Espinoza's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 21), Fischmann's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 22), and Hall's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 23). <u>Compare</u> Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 19), <u>with</u> Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 20), Defendants Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 21),

**THIS MATTER** comes before the Court on: (i) Defendant Theresa Becenti Aguilar's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 19); (ii) Defendant Jefferson Byrd's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 20); (iii) Defendant Valerie Espinoza's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 21); (iv) Defendant Stephen Fischmann's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 22); and (v) Defendant Cynthia Hall's Defendants' Joint Motion to Dismiss and Memorandum of Law in

---

Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 22) , and Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 23). The Court, accordingly, discusses the documents collectively under the name "MTD."

Two other motions are pending in this case: (i) Defendants' Motion to Disqualify and Motion to Stay Mr. Jason Marks, Esq. and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 18)("Motion to Disqualify"); and (ii) Proposed Intervenor El Paso Electric Company's Motion to Intervene as a Defendant Pursuant to Fed. R. Civ. P. 24, filed March 1, 2019 (Doc. 24)("Motion to Intervene"). The Court indicated at the April 12, 2019, hearing its inclination to deny the Motion to Disqualify, see Draft Transcript of Hearing at 43:11-43:23 (taken April 12, 2019)(Court), and it indicated at the May 2, 2019, hearing its inclination to grant the Motion to Intervene, see Draft Transcript of Hearing at 45:9-10 (taken May 2, 2019)(Court)("Tr.")(The Court's citations to the transcripts of both hearings refer to the court reporter's original, unedited version; any final transcripts may contain slightly different page and/or line numbers.).

As the Court indicated at the May 2, 2019, hearing, the Court issues, however, this opinion on the MTD before it issues an opinion on either the Motion to Disqualify or the Motion to Intervene. See Tr. at 115:1-116:2 (Court). The Court believes that it must quickly issue this opinion in fairness to Plaintiffs Great Divide Wind Farm 2 LLC and Great Divide Wind Farm 3 LLC, which seek to resolve the issues in this case within a timeframe that will permit them to complete construction on their wind energy projects before 2020's end. See, e.g., Tr. at 85:6-10 (Court); id. at 89:15-90:6 (Guy). The Court will issue later opinions and orders addressing the Motion to Disqualify and the Motion to Intervene.

Support Thereof, filed March 1, 2019 (Doc. 23)(collectively, "MTD").[2] The Court held a hearing on May 2, 2019. The primary issue is whether Plaintiffs Great Divide Wind Farm 2 LLC, and Great Divide Wind Farm 3 LLC (collectively, "Great Divide") bring against Aguilar, Byrd, Espinoza, Fischmann, and Hall (collectively, "the Commission") an as-implemented challenge -- alleging that rule 570 of the New Mexico Administrative Code, promulgated by the New Mexico Public Regulation Commission ("NMPRC"), violates the Public Regulatory Policies Act of 1978, 16 U.S.C. § 824a-3 ("PURPA"), and the regulations of the Federal Energy Regulatory Commission's ("FERC") promulgating PURPA -- or an as-applied challenge -- asking that the Court overturn the Final Order Dismissing Complaint Without Prejudice, In the Matter of the Formal Complaint of Great Divide Wind Farm 2 and Great Divide Wind Farm 3, Case No. 18-00267-UT (N.M. Pub. Regulation Comm'n Nov. 7, 2018), filed in federal court February 6, 2019 (Doc. 1-1)("N.M. Order"). Under PURPA, the Court has subject-matter jurisdiction over as-implemented challenges but does not have jurisdiction over as-applied challenges. The Court concludes that Great Divide challenges neither rule 570's lawfulness nor the lawfulness of the NMPRC's interpretation of rule 570, and rather brings a claim for relief from the NMPRC's application of its law to Great Divide. The Court concludes, accordingly, that Great Divide brings only as-applied claims. Should Great Divide amend the Great Divide's Complaint for Declaratory and Injunctive Relief, filed February 6, 2019 (Doc. 1)("Complaint"), to state clearly its theory of

---

[2] El Paso Electric would file an identical motion to dismiss, compare Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 19), with Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 24-2), should the Court permit the intervention. The Court's decision on the MTD will, accordingly, apply equally to El Paso Electric's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof.

the case as challenging rule 570 or the NMPRC's interpretation of rule 570, the Court has jurisdiction; otherwise, the Court dismisses the case without prejudice. The Court will, therefore, grant the MTD in part and dismiss it in part.

## FACTUAL BACKGROUND

The Court takes its facts largely from the Complaint. The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely Great Divide's version of events.

Great Divide is developing two wind energy projects (the "Projects") in the State of New Mexico. See Complaint ¶ 1, at 2. The Projects are located around "16 miles northeast of Lordsburg," New Mexico and are "1.16 miles apart." Complaint ¶ 33, at 9. Each Project will include "19 wind turbines, for a total of 79.8 [megawatts] maximum output." Complaint ¶ 34, at 9. The Projects are qualifying small power production facilities ("qualifying facilities") under PURPA.[3] See Complaint ¶ 1, at 2. On August 7, 2018, Great Divide filed with FERC for self-

---

[3]"[S]mall power production facility"

means a facility which is an eligible solar, wind, waste, or geothermal facility, or a facility which --

    (i) produces electric energy solely by the use, as a primary energy source, of biomass, waste, renewable resources, geothermal resources, or any combination thereof; and

    (ii) has a power production capacity which, together with any other facilities located at the same site (as determined by the Commission), is not greater than 80 megawatts;

16 U.S.C. § 796(17)(A). See 16 U.S.C. § 824a-3(l). A "'qualifying small power production facility' [is] a small power production facility that [FERC] determines, by rule, meets such requirements (including requirements respecting fuel use, fuel efficiency, and reliability) as

certification of the Projects as qualifying facilities.  See Complaint ¶ 14, at 4-5; id. ¶ 36, at 9.  Great Divide is a qualifying small power producer.[4]  See Complaint ¶ 14, at 4-5.

PURPA provides that FERC will establish rules that require "electric utilities to offer to -- (1) sell electric energy to qualifying cogeneration facilities and qualifying small power production facilities and (2) purchase electric energy from such facilities."  16 U.S.C. § 824a-3.  In the rules implementing PURPA, FERC provides that electric utilities may purchase electric energy from qualifying facilities either as the energy becomes available for purchase or "pursuant to a legally enforceable obligation."  18 C.F.R. § 292.304(d).  Energy utilities that purchase pursuant to a legally enforceable obligation may pay at the qualified facilities' choice either "(i) [t]he avoided costs calculated at the time of delivery; or (ii) [t]he avoided costs calculated at the time the obligation is incurred."  18 C.F.R. § 292.304(d)(2).  The avoided costs are "the . . . costs to an electric utility of electric energy or capacity or both which . . . such utility would generate itself or purchase from another source," if the electric utility did not purchase from the qualifying facility.  18 C.F.R. § 292.101(b)(6).

---

[FERC] may, by rule, prescribe."  16 U.S.C. § 796(17)(C).  See 16 U.S.C. § 824a-3(l).  FERC has provided that, to meet the requirements for a qualifying small power production facility, a facility must produce less than eighty megawatts of energy, see 18 C.F.R. § 292.203(a)(1); 18 C.F.R. § 292.204(a)(1), and "[t]he primary energy source of the facility must be biomass, waste, renewable resources, geothermal resources, or any combination thereof, and 75 percent or more of the total energy input must be from these sources," see 18 C.F.R. § 292.203(a)(2).  The qualifying facility must also have filed "notice of self-certification."  18 C.F.R. § 292.203(a)(3).  See 18 C.F.R. § 292.207.

[4]A "'qualifying small power producer' means the owner or operator of a qualifying small power production facility."  16 U.S.C. § 796.

Congress delegates to the states the authority to implement the FERC regulations. See Complaint ¶ 26, at 7; 16 U.S.C. § 824a-3(f). In accordance with this authority, the NMPRC promulgated rule 570 of the New Mexico Administrative Code. See Complaint ¶ 29, at 8. Rule 570 provides:

> Each utility shall purchase power from a qualifying facility from the date of interconnection at the utility's avoided cost. An electric utility is obligated to purchase power from a qualifying facility at the utility's avoided cost regardless of whether the electric utility making such purchase is simultaneously selling power to the qualifying facility.

N.M. Code R. § 17.9.570.9(A). Rule 570 does not contain the words "legally enforceable obligation" or address the concept of legally enforceable obligations. Complaint ¶ 31, at 8. The NMPRC considered a rulemaking to define "legally enforceable obligation," but did not undertake the rulemaking. Complaint ¶ 31, at 8 (citing N.M. Order ¶ 8, at 2-3).

Great Divide filed a complaint with the NMPRC on August 27, 2018. See Complaint ¶ 37, at 9. Great Divide asked the NMPRC to declare that El Paso Electric Company ("El Paso Electric") has a legally enforceable obligation to purchase the Projects' output when the Projects begin "commercial operation" in 2020. Complaint ¶ 37, at 9. Great Divide asked NMPRC to declare that El Paso Electric must purchase the output in advance for El Paso Electric's avoided costs for thirty years calculated at the time that El Paso Electric incurs the legally enforceable obligation. See Complaint ¶ 37, at 9. Great Divide proposed a methodology for determining the avoided costs at the time that El Paso Electric incurs the obligation, because rule 570.9 does not provide a methodology for such calculations. See Complaint ¶ 38, at 9.

"On September 27, 2018, [El Paso Electric] filed a motion to dismiss Plaintiffs' NMPRC complaint." Complaint ¶ 39, at 9. El Paso Electric cited the NMPRC's decision in Western Water

and Power Production Limited LLC v. Public Service Company of New Mexico, Case No. 11-00466-UT (N.M. Pub. Regulation Comm'n Nov. 7, 2018)("Western Water and Power case"). See Complaint ¶ 39, at 9. El Paso Electric argued that, according to rule 570, and to the NMPRC's decision in the Western Water and Power case, El Paso Electric did not have a legally enforceable obligation at the time, so the NMPRC should dismiss Great Divide's case. See Complaint ¶ 39, at 9.

The NMPRC granted El Paso Electric's motion and dismissed the case on November 7, 2018. See Complaint ¶ 40, at 10 (citing generally N.M. Order). The NMPRC relied on its determination from the Western Water and Power case that rule 570.9 required that qualifying facilities "must be ready to interconnect and deliver energy before any legally enforceable obligation may be created to purchase the power at avoided cost rates." Complaint ¶ 41, at 10 (citing N.M. Order ¶¶ 8, 9, at 2-3; id. ¶ 17, at 6). The NMPRC noted that, in the order that FERC issued in Western Water and Power's enforcement action, FERC had not commented on rule 570.9 and the NMPRC reasoned that the silence suggested FERC's approval of the NMPRC's decision. See Complaint ¶ 42, at 10 (citing N.M. Order ¶ 12, at 4; id. ¶ 17, at 6). The NMPRC determined that, because the Projects were not built, they did not meet rule 570's interconnectedness requirement.[5] See MTD at 3. The NMPRC did not address "any methodology for determining

_____

[5]The Commission and El Paso Electric interpret rule 570.9 differently. See MTD at 3 n.4. The Commission reads rule 570.9 to establish a legally enforceable obligation when the qualifying facility is ready to interconnect, and El Paso Electric contends that rule 570.9 establishes a legally enforceable obligation when the qualifying facility is interconnected. See MTD at 3 n.4. The Commission and El Paso Electric agree, however, that, for the MTD's purposes, the distinction between their interpretations is irrelevant, because the Projects were neither ready to interconnect nor interconnected when the NMPRC issued the N.M. Order. See MTD at 3 n.4. As the Court decides that it lacks jurisdiction over this matter, the Court does not decide the issue of rule 570.9's interpretation in this Memorandum Opinion and Order.

avoided energy cost calculated at the time the obligation is incurred between Plaintiffs and EPE or . . . offer to resolve disputes between Plaintiffs and EPE regarding the calculation of the avoided cost rate." Complaint ¶ 44, at 10. See id. ¶ 54, at 12.

On December 6, 2018, Great Divide brought an enforcement action before FERC to overturn the N.M. Order for the NMPRC's "failure to implement PURPA consistent with federal law and FERC's regulations." Complaint ¶ 15, at 5. On February 4, 2019, FERC issued the Notice of Intent Not to Act and Declaratory Order, Great Divide Wind Farm 2 LLC, Great Divide Wind Farm 3 LLC, 166 FERC ¶ 61,090, filed February 6, 2019 (Doc. 1-2)("FERC Order"). See Complaint ¶ 16, at 5. FERC declined to begin an enforcement action, but notified Great Divide that Great Divide might bring an action in the appropriate court. See Complaint ¶ 16, at 5 (citing FERC Order ¶ 2, at 1). FERC also stated that its silence was not a comment on the parties' arguments, and that the NMPRC should not have treated FERC's silence in the Western Water and Power enforcement action as a substantive comment on the NMPRC's ruling. See Complaint ¶ 17, at 5 (citing FERC Order ¶¶ 20-21, at 8).

Great Divide argues that, before it completes construction on the Projects, it is entitled to a determination that El Paso Electric has a legally enforceable obligation to purchase the Projects' output. See Complaint ¶ 45, at 10-11. Great Divide contends that the N.M. Order injures it by removing the certainty of a legally enforceable obligation, and consequently harming Great Divide's opportunities to obtain financing before the Projects reach a state at which the Projects can interconnect and deliver energy. See Complaint ¶ 46, at 11. Great Divide contends that the "NM Order violates PURPA and FERC regulations because it requires Plaintiffs to construct their

facilities and obtain signed interconnection agreements as a prerequisite to the creation of a legally enforceable obligation." Complaint ¶ 53, at 12. Great Divide also argues that

> the NM Order violates PURPA and FERC regulations because, in ruling that no legally enforceable obligation exists at this time, the NMPRC also failed to develop any methodology for determining avoided energy cost calculated at the time the obligation is incurred between Plaintiffs and EPE or to offer to resolve disputes between Plaintiffs and EPE regarding the calculation of the avoided cost rate.

Complaint ¶ 54, at 12. Great Divide adds that the N.M. Order harms the "public interest," because Congress has determined that the public benefits from encouraging small power production facilities. Complaint ¶ 56, at 12.

## PROCEDURAL BACKGROUND

Great Divide filed the Complaint after it obtained FERC's consent to file a claim in federal court. See MTD at 4 (citing FERC Order ¶ 18, at 7). Great Divide seeks a declaration that "the New Mexico Public Regulation Commission's Order, dated November 7, 2018, violates federal law and for injunctive relief." Complaint at 1 (citing generally N.M. Order). Great Divide asks for a judgment

> [d]eclaring that the NM Order violates PURPA and FERC regulations insofar as it places improper obligations on Plaintiffs before EPE is obligated to enter into a contract or other legally enforceable obligation to purchase the output of [the Projects] for the specified term, and for injunctive relief requiring that the NMPRC issue an order that complies with federal law.

Complaint ¶ a, at 13. Great Divide also asks that the Court enjoin

> . . . . Defendants to issue a new order implementing FERC's rules under PURPA in a manner consistent with federal law, ruling that Plaintiffs need not construct their Projects and obtain signed interconnection agreements as a prerequisite to the creation of a legally enforceable obligation, and implementing a methodology for determining avoided energy costs calculated at the time the obligation is incurred or offering to resolve disputes between Plaintiffs and EPE regarding the calculation of an avoided cost rate.

Complaint ¶ b, at 13.

1. **The MTD.**

The Commission asks that the Court dismiss the Complaint for lack of subject-matter jurisdiction. See MTD at 1-2. According to the Commission, PURPA delineates two challenges to state regulatory actions: (i) as-applied challenges that "involve[] a contention that the agency's implementation plan is unlawful as it applies to or affects an individual petitioner"; and (ii) as-implemented challenges that "allege[] that the state agency has failed to comply with its obligation under Section 210(f)(2) of PURPA to devise a plan that implements PURPA and FERC's PURPA-related regulations." MTD at 4 (citing 16 U.S.C. § 824a-3(g)-(h); Power Res. Grp. v. Pub. Util. Comm'n of Tex, 422 F.3d 231, 233, 235 (5th Cir. 2005); Mass. Inst. of Tech. v. Mass Dep't of Pub. Utils, 941 F. Supp. 233, 237 (D. Mass. 1996)(Lindsay, J.); Greensboro Lumber Co. v. Ga. Power Co., 643 F. Supp. 1345, 1374 (N.D. Ga. 1986)(Moye, J.)). The Commission explains that federal courts have jurisdiction over only as-implemented claims. See MTD at 4-5.

The Commission argues that Great Divide brings an as-applied challenge. See MTD at 5. The Commission contends that Great Divide's requested relief would benefit only Great Divide and affect only Great Divide's relationship with El Paso Electric. See MTD at 5. The Commission contends that, in the Complaint, Great Divide admits that the NMPRC implements PURPA and the related FERC regulations through rule 570, and does not challenge rule 570's legality, but argues that rule 570 does not address legally enforceable obligations. See MTD at 17-18. According to the Commission, rule 570 prescribes the date on which an energy utility's legally enforceable obligation arises. See MTD at 18.

The Commission cites two cases to support its arguments.  See MTD at 19-20.  According to the Commission, in Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d 380 (5th Cir. 2014), the United States Court of Appeals for the Fifth Circuit concluded that a qualified facility raised an as-applied challenge where the qualified facility's claims rested largely on the order that the Public Utility Commission of Texas ("PUCT") issued rather than on a rule that the PUCT promulgated.  See MTD at 19 (citing Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 390).  The Commission states that, in Exelon Wind 1, L.L.C. v. Nelson, the Fifth Circuit also rested its conclusions on the qualified facility's requested relief -- that the federal court require that the PUCT reopen the considerations in its particular case and not enforce the prior order against it.  See MTD at 19 (citing Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 390).  The Commission also cites Power Resource Group v. Klein, No. A-03-CA-762-H, 2004 U.S. Dist. Lexis 28820 (W.D. Tex. Feb. 18, 2004)(Hudspeth, J.), in which the qualifying facility asked the federal court to declare that the PUCT's actions affecting the qualifying facility violated PURPA.  See MTD at 19-20 (citing Power Res. Grp. v. Klein, 2004 U.S. Dist. Lexis 28820, at *23).  According to the Commission, the qualifying facility "requested injunctive relief requiring the PUCT to promulgate new regulations and to reconsider the qualifying facility's petition under those new regulations."  MTD at 20 (citing Power Res. Grp. v. Klein, 2004 U.S. Dist. Lexis 28820, at *23).  The Commission describes that the Honorable Harry Lee Hudspeth, then-Senior United States District Judge for the Western District of Texas, held that the qualifying facility brought an as-applied claim.  See MTD at 20 (citing Power Res. Grp. v. Klein, 2004 U.S. Dist. Lexis 28820, at *23).

The Commission also avers that courts have concluded that 28 U.S.C. § 1331 does not grant subject-matter jurisdiction where a more specific statute elsewhere grants subject-matter

jurisdiction. See MTD at 20. The Commission states that PURPA provides exclusive subject-matter jurisdiction to state courts over as-applied challenges, so the Court lacks subject-matter jurisdiction here. See MTD at 20-21. The Commission likewise argues that the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, does not provide an independent jurisdictional basis for federal cases, so Great Divide cannot rely on the Declaratory Judgment Act for subject-matter jurisdiction. See MTD at 21.

**2.      The Response.**

Great Divide responds. See Plaintiffs' Response in Opposition to Defendants' Joint Motion to Dismiss, filed March 15, 2019 (Doc. 29)("Response"). Great Divide agrees with the Commission that PURPA provides different mechanisms for bringing as-applied challenges and as-implemented challenges. See Response at 2-3. Great Divide argues that it brings an as-implemented challenge. See Response at 3. Great Divide cites FERC's Policy Statement Regarding the Commission's Enforcement Role Under Section 210 of the Public Utility Regulatory Policies Act of 1978, 23 FERC ¶ 61,304 (1983)("FERC Policy Statement"), as an authority that describes the difference between as-applied and as-implemented challenges. See Response at 5-6. Great Divide describes that, in the FERC Policy Statement, FERC clarifies its authority to ensure that state agencies both implement the FERC regulations and promulgate regulations that are consistent with those regulations. See Response at 6. According to Great Divide, FERC describes that state courts, and not FERC or federal courts, have authority to review state actions implementing regulations that appropriately apply PURPA and the FERC regulations, and to consider qualifying facility's claims where the state misapplied such a regulation. See Response at 6 (citing FERC Policy Statement at 61,645).

To support its arguments, Great Divide cites <u>Winding Creek Solar L.L.C. v. Peevey</u>, 293 F. Supp. 3d 980 (N.D. Cal. 2017)(Donato, J.).  <u>See</u> Response at 7.  Great Divide argues that, in that case, the Honorable James Donato, United States District Judge for the Northern District of California, concluded that a challenge to orders of the California Public Utilities Commission ("CPUC") "capping utility purchases from QFs [(qualifying facilities)] and setting prices at rates different from the 'avoided cost' pricing required by FERC's rules failed to comply with PURPA and FERC's rules."  Response at 7.  According to Great Divide, the qualified facility's challenge to the orders constituted an as-implemented challenge whereas a claim about a "specific avoided cost price" posed an as-applied challenge.  <u>See</u> Response at 7.

Great Divide concludes that, here, Great Divide brings an as-implemented challenge, because it argues that rule 570 violates FERC's regulations by requiring a qualified facility be constructed and be ready to be interconnected before a legally enforceable obligation is deemed to bind an energy utility to purchase from the qualified facility.  <u>See</u> Response at 7-8.  Great Divide argues that rule 570 forms the basis for the NMPRC's decision.  <u>See</u> Response at 10.  Great Divide avers that the N.M. Order applies rule 570's plain meaning and does not incorrectly apply a lawful regulation.  <u>See</u> Response at 8.  Great Divide emphasizes that the <u>Western Water and Power</u> case on which the NMPRC relies in the N.M. Order uses the same interpretation of rule 570 as the interpretation in the N.M. Order.  <u>See</u> Response at 8-9.  For Great Divide, this series of NMPRC decisions reflects that the N.M. Order applies a rule of general applicability to Great Divide.  <u>See</u> Response at 8-9.

Great Divide further argues that its FERC enforcement action raised an as-implemented challenge to rule 570.  <u>See</u> Response at 10-11.  Great Divide states that the NMPRC and El Paso

Electric intervened in the enforcement action to argue that rule 570 did not improperly implement PURPA and the FERC regulations, but did not argue that Great Divide raised an as-applied challenge. See Response at 11-12. Great Divide adds that, in the FERC Order, FERC stated: "'*Great Divide thus may bring its own enforcement action against the New Mexico [Public Regulation] Commission in the appropriate United States district court.*'" Response at 13 (emphasis and alteration in Response)(quoting FERC Order ¶ 18, at 7). Great Divide posits that this statement reflects FERC's view that Great Divide raises an as-implemented challenge. See Response at 13.

For Great Divide, the Complaint reflects an as-implemented challenge. See Response at 13-15. Great Divide explains that it asks that the Court declare the NMPRC's implementation of PURPA and the FERC regulations unlawful, and enjoin the NMPRC to issue an order that lawfully implements PURPA and the FERC regulations. See Response at 13. According to Great Divide, the Complaint explains that the N.M. Order relies on rule 570. See Response at 13. Great Divide addresses the Commission's argument regarding whether Great Divide argues that New Mexico implemented PURPA and the FERC regulations. See Response at 14. Great Divide characterizes the argument as suggesting that qualified facilities may bring enforcement actions only when a state takes no steps to implement PURPA and the FERC regulations. See Response at 14. According to Great Divide, FERC rejects this interpretation of PURPA in the FERC Policy Statement in which FERC provides that it has "authority to require the commencement of implementation [of PURPA]" where a state regulatory agency has enacted an unlawful implementation of PURPA and the FERC regulations. Response at 14 (citing FERC Policy Statement, 23 FERC at 61,644).

Great Divide also disputes that its case relates only to its relationship with El Paso Electric. See Response at 15. According to Great Divide, its arguments about rule 570 would affect all qualified facilities and energy utilities in New Mexico. See Response at 15. Great Divide argues that the Commission's theory that as-implemented challenges cannot be brought where the challenged implementation affects the petitioner's project would prevent any party from having standing to bring such a challenge. See Response at 15. Great Divide adds that the cases that the Commission cites involve as-implemented claims wherein the challenged implementation would injure the qualified facility. See Response at 16-18. Great Divide argues that, in Power Resource Group Inc., v. Public Utility Commission of Texas, the Fifth Circuit upheld Judge Hudpeth's conclusion that a qualified facility raised an as-implemented challenge after the PUCT dismissed its petition for an order determining that an energy utility had a legally enforceable obligation. See Response at 16-17 (citing Power Res. Grp. Inc., v. Pub. Util. Comm'n of Tex., 422 F.3d at 238). Great Divide also contends that, in Exelon Wind 1, L.L.C. v. Nelson, the Fifth Circuit treated as as-implemented challenges those parts of the qualified facility's complaint that "'would necessarily require the PUC[T] to alter its current rules.'" Response at 17-18 (quoting Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d 380 at 393).

### 3. The Reply.

The Commission replies. See Defendants' Reply to Plaintiffs' Response in Opposition to Defendants' Joint Motion to Dismiss, filed April 1, 2019 (Doc. 34)("Reply"). The Commission argues that, in the Complaint, Great Divide does not ask that the Court overturn rule 570, but asks that the Court overturn the N.M. Order that applies rule 570 and that the Court enjoin the NMPRC to issue a new order. See Reply at 2. The Commission describes that Great Divide could have

brought an as-implemented challenge by directly challenging rule 570 and asking the Court to strike rule 570. <u>See</u> Reply at 3.

The Commission analyzes the Complaint. <u>See</u> Reply at 4. The Commission directs the Court to Great Divide's first request for relief -- that the Court declare that the N.M. Order violates PURPA and the FERC regulations. <u>See</u> Reply at 4. The Commission emphasizes that the Complaint does not request that the Court overturn rule 570 -- the rule of general applicability that the N.M. Order applies. <u>See</u> Reply at 4. The Commission contends that Great Divide's second request for relief likewise does not mention rule 570, and instead asks that the Court order the NMPRC to grant Great Divide relief from the NMPRC's application of rule 570 and to establish a methodology for calculating the avoided costs. <u>See</u> Reply at 5. The Commission emphasizes that Great Divide does not even mention rule 570 in its requests for relief and that Great Divide routinely states that the N.M. Order violates PURPA and the FERC regulations. <u>See</u> Reply at 5-6.

The Commission disputes Great Divide's characterization of <u>Winding Creek Solar L.L.C. v. Peevey</u>. <u>See</u> Reply at 6. The Commission argues that, in <u>Winding Creek Solar L.L.C. v. Peevey</u>, Judge Donato addressed three CPUC orders that applied broadly to all qualified facilities and energy utilities. <u>See</u> Reply at 6. The Commission argues that Great Divide does not challenge a statewide order or regulation. <u>See</u> Reply at 6-7.

The Commission also attacks Great Divide's descriptions of the FERC enforcement action. <u>See</u> Reply at 7-8. The Commission argues that whether Great Divide properly pled an as-implemented challenge before FERC is irrelevant and that the FERC's statement about Great Divide's ability to file an action in federal court does not give the Court jurisdiction over this case.

See Reply at 7. The Commission argues that it did not challenge Great Divide's FERC enforcement actions on the as-implemented and as-applied distinction, because the dichotomy applies only to federal courts' jurisdiction. See Reply at 8.

The Commission also discusses the Fifth Circuit cases. See Reply at 8-9. The Commission agrees with Great Divide that the Fifth Circuit cases stand for the proposition that federal courts have jurisdiction where a qualifying facility challenges a rule of general applicability. See Reply at 8. The Commission argues, however, that this rule does not aid Great Divide. See Reply at 8. The Commission contends that, in Power Resource Group Inc., v. Public Utility Commission of Texas, the qualifying facility challenged the PUCT's rule, but that Great Divide has not challenged rule 570. See Reply at 8-9 (citing Power Res. Grp. Inc., v. Pub. Util. Comm'n of Tex., 422 F.3d at 238). According to the Commission, in Exelon Wind 1, L.L.C. v. Nelson, the Fifth Circuit addressed likewise only those claims that directly challenged the PUCT's rules. See Reply at 9 (citing Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 393).

The Commission argues that Great Divide seeks a new judgment from the NMPRC but does not want a new rulemaking for rule 570. See Reply at 9. The Commission describes that rulemaking takes time and that, to avoid delaying financing and construction, Great Divide asks that the Court strike the N.M. Order while at the same time arguing that the Complaint attacks rule 570. See Reply at 10. The Commission avers that this argument by Great Divide is misleading and concludes that the Court should dismiss the Complaint. See Reply at 10.

4. **The Hearing.**

The Commission opined that Great Divide challenges the N.M. Order in an as-applied challenge and not rule 570 in an as-implemented challenge, because Great Divide does not want

the NMPRC to have to engage in a rulemaking to change rule 570. <u>See</u> Draft Transcript of Hearing at 47:15-21 (taken May 2, 2019)(Amer)("Tr."). The Commission expressed its belief that Great Divide worries that a rulemaking will prevent the Projects' construction on a timeline that will allow Great Divide to earn tax credits for renewable energy projects. <u>See</u> Tr. at 47:21-24 (Amer); <u>id.</u> at 48:18-49:9 (Amer). The Commission explained that a rulemaking takes about eighteen months to complete. <u>See</u> Tr. at 51:19-23 (Amer). The Court asked Great Divide to discuss these tax credits. <u>See</u> Tr. at 84:21-85:2 (Court). Great Divide explained that it will receive tax credits if it completes construction on the Projects before 2020. <u>See</u> Tr. at 85:6-11 (Guy). The Court pressed Great Divide on how the timing of the Projects' construction affects the tax credits. <u>See</u> Tr. at 86:16-22 (Court). Great Divide identified the tax credit as a production tax credit that provides a credit for every kilowatt-hour of renewable energy that the Projects produce. <u>See</u> Tr. at 90:20-25 (Marks). According to Great Divide, the tax credit is applied over the Projects' first ten years of production. <u>See</u> Tr. at 91:3-7 (Marks). Great Divide described that, if construction begins by a certain deadline, the developer receives a certain amount of tax credits, but if the construction is delayed, the developer receives a "proportional reduction" in the tax credits. Tr. at 87:4 (Guy). <u>See id.</u> at 86:23-87:5 (Guy). According to Great Divide, it is deemed for tax purposes to have begun work on the Projects in 2016 and, therefore, must complete the Projects by 2020 to receive the one hundred percent credit.[6] <u>See</u> Tr. at 93:21-94:8 (Rucker).

---

[6]The Library of Congress' Congressional Research Service has succinctly explained these tax credits. <u>See</u> Cong. Research Serv., <u>The Renewable Electricity Production Tax Credit: In Brief</u> (Nov. 27, 2018), https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source= web&cd=3&cad=rja&uact=8&ved=2ahUKEwju76CXyILiAhWUvJ4KHfO1BTAQFjACegQIA RAC&url=https%3A%2F%2Ffas.org%2Fsgp%2Fcrs%2Fmisc%2FR43453.pdf&usg=AOvVaw0 CBXyvST-jNvn-aZVA6dCz ("CRS Report"). Congress enacted the Production Tax Credit for

The Commission reiterated the background on PURPA and the FERC regulations and the Commission' arguments from the MTD and the Reply.  <u>See</u> Tr. at 52:20-56:19 (Moss); <u>id.</u> at 57:11-59:8 (Moss); <u>id.</u> at 59:12-7 (Moss).  The Commission added that it could not have waived its jurisdictional arguments during the FERC enforcement action and repeats its Reply's other arguments about that enforcement action.  <u>See</u> Tr. at 61:17-62:11 (Moss).  Great Divide replied and mentioned that parties can raise an as-applied/as-implemented challenge in FERC proceedings but admitted that the issue is not central to this case.  <u>See</u> Tr. at 62:22-63:6 (Guy).  Great Divide then repeated its arguments from the Response.  <u>See</u> Tr. at 63:8-64:1 (Guy); <u>id.</u> at 65:24-67:2

---

wind facilities in the Consolidated Appropriations Act, Pub. L. 114-113 (2016).  <u>See</u> CRS Report at 1.  The Production Tax Credit is calculated by the kilowatt-hour of energy that a facility generates.  <u>See</u> CRS Report at 1.  A facility may claim the credit once it begins production and for the first ten years after it begins production.  <u>See</u> CRS Report at 1.  The credit amount adjusts each year according to inflation.  <u>See</u> CRS Report at 1.  The maximum tax credit for 2017 and 2018 is 2.4 cents per kilowatt-hour.  <u>See</u> CRS Report at 1.  For 2016, the maximum credit amount was 2.3 cents per kilowatt-hour.  <u>See</u> CRS Report at 1.  The Production Tax Credit for wind facilities began phasing out in 2017, but wind facilities for which construction begins before 2020 will qualify for the credit.  <u>See</u> CRS Report at 1.  Wind facilities that began construction in 2017 will receive eighty percent of the tax credit; facilities that began construction in 2018 will receive sixty percent of the tax credit; and facilities that begin construction in 2019 will receive forty percent of the credit.  <u>See</u> CRS Report at 1.

The Internal Revenue Service ("IRS") provides a safe harbor for wind facilities that begin construction in 2016 and complete construction "no more than four calendar years after" the year construction began.  Comm'r, Beginning of Construction for Sections 45 and 48, Notice 2016-31 ¶ 3, at 5, https://www.irs.gov/pub/irs-drop/n-16-31.pdf.  <u>See</u> Comm'r, Beginning of Construction for Purposes of the Renewable Electricity Production Tax Credit and Energy Investment Tax Credit, Notice 2013-29 § 1, at 1 ("Notice 2013-29"), https://www.google.com/search?q=Notice+2013-29+%28Five+Percent+Safe+Harbor%29+irs&ie=utf-8&oe=utf-8&client=firefox-b-1-ab (establishing the safe harbor for facilities on which construction begins before January 1, 2014).  Under the safe harbor, the IRS deems construction to have begun on a wind facility when a developer begins physical work on the project, or when a developer pays five percent or more of the cost of the facility, and makes "continuous efforts to advance toward completion of the facility," pursuant to the IRS' regulations.  Notice 2013-29 §§ 4, 5, at 2, 9 (describing the safe harbors).  Accordingly, a wind facility that begins construction in 2016 and finishes construction in 2020 receives the full Production Tax Credit.

(Guy). Great Divide added to its arguments that the Commission does not want anyone to challenge rule 570 and that rule 570 defeats PURPA's purpose of encouraging development by requiring that developers build qualifying facilities before obtaining guarantees of purchasers for their electric energy. See Tr. at 64:25-65:23 (Guy).

The Court asked whether a complaint could raise as-applied and as-implemented challenges, see Tr. at 64:2-6 (Court), and Great Divide confirmed that such a scenario was possible but argued that it raises only an as-implemented challenge, see Tr. at 64:7-13 (Guy). Great Divide admitted that rule 570 on its face is not unlawful, see Tr. at 80:15-22 (Guy), and averred that Great Divide challenges the NMPRC's interpretation of rule 570, see Tr. at 67:3-14 (Guy). Great Divide summarized that it challenges the N.M. Order, because the N.M. Order contains the unlawful interpretation that the NMPRC applied to Great Divide. See Tr. at 72:18-20 (Guy). Great Divide explained that rule 570 does not mention a "legally enforceable obligation" and that the NMPRC in the Western Water and Power case interpreted rule 570 for the first time as establishing when a legally enforceable obligation arises. See Tr. at 70:2-18 (Guy). Great Divide emphasized that the NMPRC has proposed a rulemaking to define "legally enforceable obligation," but has not undertaken the rulemaking. See Tr. at 70:18-21 (Guy). According to Great Divide, in the Complaint, it comments that rule 570 does not include the words "legally enforceable obligation" and that the NMPRC relied on the Western Water and Power case to decide its case, and requests that the Court declare that the N.M. Order is unlawful. See Tr. at 78:23-79:8 (Guy). In Great Divide's view, the Commission's position would grant immunity from challenge to state agencies' interpretations of the state regulations implementing PURPA. See Tr. at 81:4-19 (Guy).

The Commission replied and argued that Great Divide reads incorrectly rule 570, because the rule establishes on its face when a legally enforceable obligation arises.  See Tr. at 96:14-97:10 (Moss).  The Commission added that, in the N.M. Order, the NMPRC states that it rests its conclusion on rule 570's plain meaning.  See Tr. at 97:11-24 (Moss).  The Commission further responded that Great Divide could have challenged rule 570 in the Complaint but chose not to directly challenge the rule.  See Tr. at 97:24-98:14 (Moss).

The Court asked in what timeframe Great Divide envisioned needing a decision from the Court.  See Tr. at 87:23-88:7 (Court).  Great Divide replied that, ideally, it would like a response to the MTD in a week or two, and that it envisions filing motions for summary judgment within a couple months.  See Tr. at 89:15-90:6 (Guy).  Great Divide explained that it estimates needing about fourteen months to build the projects.  See Tr. at 91:21-25 (Marks).  Great Divide described that the Projects' capital costs are around $224 million and that it will need to finance the Projects by around October, 2019, to meet its goal for the tax credit.  See Tr. at 92:20-93:4 (Rucker).[7]  Great Divide explained that it would struggle to complete the project if it receives even only eighty percent of the tax credits.  See Tr. at 93:4-15 (Rucker).

The Commission opined that, no matter what the Court does in this case, Great Divide waited too long to resolve the case, and the parties will not resolve the case's merits in the time required for Great Divide to begin construction, because Great Divide also wants to establish an avoided cost rate for El Paso Electric.  See Tr. at 100:2-15 (Moss).  The Court asked the Commission what it meant by stating that Great Divide waited too long, and the Commission explained that Great Divide knew of the Western Water and Power case in 2016 and was planning

---

[7]Rucker is the Plaintiffs' CEO.  See Tr. at 92:15-17 (Guy).

the Projects in 2016, but waited until 2018 to bring this case.  See Tr. at 100:16-101:6 (Court, Moss).  Great Divide responded that developing the Projects required several years of study and that it worked with El Paso Electric before filing the complaint with the NMPRC, so it did not delay in filing its complaint with the NMPRC.  See Tr. at 111:10-20 (Guy).  The Court promised the parties an opinion on the MTD, and stated that it would address the MTD before it addresses the Defendants' Motion to Disqualify and Motion to Stay Mr. Jason Marks, Esq. and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 18), or Proposed Intervenor's El Paso Electric Company's Motion to Intervene as a Defendant Pursuant to Fed. R. Civ. P. 24, filed March 1, 2019 (Doc. 24).  See Tr. at 115:1-116:2 (Court).  This Memorandum Opinion and Order is the promised opinion.

## LAW REGARDING RULE 12(B)(1) MOTIONS TO DISMISS

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citing Bender v. Williamsport Area School Dist., 475 U.S. 534, 541, (1986); United States v. Nixon, 418 U.S. 683 (1974); Tafoya v. U.S. Dep't of Justice, Law Enf't Assistance Admin., 748 F.2d 1389, 1390 (10th Cir. 1984)).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  "[Because] federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction."  United States ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160

(10th Cir. 1999). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise, by motion, the defense of the court's "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir.), cert. denied, 454 U.S. 897 (1981). But when the attack is factual,
>
>> a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)(citations omitted).

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9 (D.N.M. March 11, 2009)(Browning, J.), aff'd on other grounds by 634 F.3d 1170 (10th Cir. 2011). See World Fuel Servs., Inc. v. Nambe Pueblo Dev. Corp., 362 F. Supp. 3d 1021, 1086-87 (D.N.M. 2019)(Browning, J.). The Fifth Circuit has stated:

> "[T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the complaint's allegations to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment.  See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).  "When subject-matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined."  Garcia v. United States, No. CIV 08-0295 JB/WDS, 2009 WL 1300938, at *9 (D.N.M. March 30, 2009)(Browning, J.)(citing Wheeler v. Hurdman, 825 F.2d at 259; Holt v. United States, 46 F.3d at 1003).

## LAW REGARDING PURPA AND THE RELATED FERC REGULATIONS

Congress enacted PURPA in the late 1970s to encourage the development of alternative energy sources.  See F.E.R.C. v. Mississippi, 456 U.S. 742, 756-57 (1982).  Concerns about the United States of America's lagging domestic oil market and recent energy scarcities fueled Congress' interest in alternative resources.  See F.E.R.C. v. Mississippi, 456 U.S. at 756-57.  See also Michael D. Hornstein & J.S. Gebhart Stoermer, The Energy Policy Act of 2005: Purpa Reform, the Amendments and Their Implications, 27 Energy L.J. 25, 25-26 (2006)(describing PURPA as "the Carter administration's response to the energy crises of the 1970s, most notably the Middle East oil embargo of 1973-74 and a second oil 'shock' in 1977" (footnote omitted)). The United States relied on foreign oil, faced shortages in natural gas, and had experienced increases in electricity costs.  See F.E.R.C. v. Mississippi, 456 U.S. at 756.  See also Richard D. Cudahy, PURPA: The Intersection of Competition and Regulatory Policy, 16 Energy L.J. 419, 421 (1995)(describing that PURPA responded to "dramatic and severe shortages of oil and natural gas and skyrocketing prices of almost every form of energy [that had] prompted public concern"; "the Arab oil embargo [that] interdict[ed] supplies from the Middle East"; "an intense desire to reduce dependence on foreign oil (and on fossil fuels generally) and to diversify technologies used for the generation of electricity"; and the desire to encourage alternative electricity generation through renewable resource "because of the painful scarcity of oil and natural gas and environmental and safety objections to coal and nuclear power" (footnote omitted)); Jim Rossi & Thomas Hutton, Federal Preemption and Clean Energy Floors, 91 N.C. L. Rev. 1283, 1306 (2013)("In the five years prior to PURPA's enactment, natural gas and oil -- which together accounted for about one third of the electricity generation portfolio -- had increased in cost by 175% and 400%,

respectively." (footnote omitted)); Rohit C. Sharma, <u>Niagara Mohawk Power Corp. v. FERC</u>, 23 Energy L.J. 157 (2002)("PURPA was intended by Congress to combat a nationwide energy crisis by promoting long-term economic growth by reducing the nation's reliance on oil and gas and to encourage development of alternative energy sources."). Congress confronted an electricity industry that used a higher percentage of energy in the country than it produced. <u>See</u> <u>F.E.R.C. v. Mississippi</u>, 456 U.S. at 756. The Supreme Court of the United States describes in detail the background against which Congress legislated:

> Committees in both Houses of Congress noted the magnitude of the Nation's energy problems and the need to alleviate those problems by promoting energy conservation and more efficient use of energy resources. <u>See</u> S. Rep. No. 95-442, at 7-10; H.R. Rep. No. 95-543, vol. I, pp. 5-10 (1977); H.R. Rep. No. 95-496, pt. 4, pp. 3-7, 125-130 (1977). Congress was aware that domestic oil production had lagged behind demand and that the Nation had become increasingly dependent on foreign oil. <u>Id.</u>, at 3. The House Committee observed: "Reliance upon imported oil to meet the bulk of U. S. oil demands could seriously jeopardize the stability of the Nation's economy and could undermine the independence of the United States." <u>Ibid.</u> <u>See</u> H.R. Rep. No. 95-543, vol. I, at 5-6. Indeed, the Nation had recently experienced severe shortages in its supplies of natural gas. <u>Id.</u>, at 7. The House and Senate Committees both noted that the electricity industry consumed more than 25% of the total energy resources used in this country while supplying only 12% of the user demand for energy. S. Rep. No. 95-442, at 7-8; H.R. Rep. No. 95-496, pt. 4, at 125. In recent years, the electricity utility industry had been beset by numerous problems, <u>id.</u>, at 129, which resulted in higher bills for the consuming public, a result exacerbated by the rate structures employed by most utilities. S. Rep. No. 95-442, at 26. Congress naturally concluded that the energy problem was nationwide in scope, and that these developments demonstrated the need to establish federal standards regarding retail sales of electricity, as well as federal attempts to encourage conservation and more efficient use of scarce energy resources. <u>See</u> <u>id.</u>, at 24-32; H.R. Rep. No.95-496, pt. 4, at 131-133, 136-138, 170-171.
>
> Congress also determined that the development of cogeneration and small power production facilities would conserve energy. The evidence before Congress showed the potential contribution of these sources of energy: it was estimated that if proper incentives were provided, industrial cogeneration alone could account for 7%-10% of the Nation's electrical generating capacity by 1987. S. Rep. No. 95-442, at 21, 23.

<u>F.E.R.C. v. Mississippi</u>, 456 U.S. at 756-57.

PURPA amends portions of the Federal Power Act, 16 U.S.C. §§ 791a, 792, 793, 796-818, 820-23, 823a-23g, 824, 824a-824j, 824j-1, 824k, 824p-24w, 825, 825a, 825p, 824q-1, 825r, and, more importantly for this litigation, adds provisions to encourage the development of nontraditional energy facilities. <u>See</u> Stanley A. Martin, <u>Problems with PURPA: The Need for State Legislation to Encourage Cogeneration and Small Power Production</u>, 11 B.C. Envtl. Aff. L. Rev. 149, 157 (1983). Through the additional provisions, Congress attempted to address two specific factors that it believed inhibited the nontraditional energy industry. <u>See</u> <u>F.E.R.C. v. Mississippi</u>, 456 U.S. at 750-51. The problems were the reluctance of "traditional electricity utilities" "to purchase power from, and to sell power to, the nontraditional facilities," and the "financial burdens" that state and federal utilities authorities imposed on the nontraditional facilities through energy regulations. <u>F.E.R.C. v. Mississippi</u>, 456 U.S. at 750-51. <u>See</u> Cudahy, <u>supra</u>, at 422 ("A major problem confronting both cogeneration and energy from renewable sources was that the electric utilities comprised almost the only market for electricity from these alternative energy sources. And the utilities, for various reasons -- including cost -- were reluctant to purchase power from their potential competitors.") Steven Ferrey et. al., <u>Fire and Ice: World Renewable Energy and Carbon Control Mechanisms Confront Constitutional Barriers</u>, 20 Duke Envtl. L. & Pol'y F. 125, 140 (2010)(listing concerns that Congress addressed through PURPA); Ben Raker, <u>Decentralization and Deference: How Different Conceptions of Federalism Matter for Deference and Why That Matters for Renewable Energy</u>, 47 Envtl. L. Rep. News & Analysis 10963, 10965 (2017)(explaining that energy utilities at the time of PURPA's passage sold and produced power and preferred more consistent power sources than renewable energy facilities,

which relied on "fickle" energy resources, so hesitated to purchase power from other, nontraditional energy companies).   To address the first concern, Congress required FERC to establish rules that require electric utilities to sell electric energy to and purchase electric energy from nontraditional energy facilities -- the qualifying facilities.  See 16 U.S.C. § 824a-3.  Congress directs FERC that the rates which electric utilities pay to purchase electric energy and at which electric utilities sell electric energy "shall be just and reasonable to the electric consumers of the electric utility and in the public interest," and "shall not discriminate against qualifying cogenerators or qualifying small power producers."  16 U.S.C. § 824a-3(b)-(c).  The rates for purchasing electric energy must not exceed "the cost to the electric utility of the electric energy which . . . such utility would generate or purchase from another source" had the electric utility not purchased from the qualifying facility.  16 U.S.C. § 824a-3(d).  See Hornstein & Gebhart Stoermer, supra, at 30 ("PURPA created a market for the power generated by QFs [(qualifying facilities)] by requiring electric utilities to purchase energy generated by QFs and by instructing the FERC to promulgate rules to ensure that the rates for such purchases are just and reasonable and do not discriminate against QFs.").  To resolve the second concern, Congress asked FERC to create regulations exempting the non-traditional energy sources from specified federal and state regulations.  See 16 U.S.C. § 824a-3(e)(1).

PURPA protects two forms of qualifying facility.  See 16 U.S.C. § 824a-3.  The first form -- a "cogeneration facility" -- produces "(i) electric energy, and (ii) steam or forms of useful energy (such as heat) which are used for industrial, commercial, heating, or cooling purposes."  16 U.S.C. § 796(18)(A).  See 16 U.S.C. § 824a-3(l).  Cogeneration, for instance, preserves heat -- thermal energy -- from a system that creates energy and uses that heat for another purpose.  See

Cogeneration, Wikipedia, https://en.wikipedia.org/wiki/Cogeneration (last visited May 3, 2019). In a combined heat and power plant, that other purpose might, for example, be for heating.  See Cogeneration, supra.  A cogeneration facility becomes qualified for PURPA's purposes on the filing of "a notice of self-certification" with FERC unless exempted from the requirement, 18 C.F.R. § 292.203(b)(2); see 16 U.S.C. § 824a-3(l), and on meeting FERC's output, efficiency, and use standards, see 16 U.S.C. § 824a-3(l); 18 C.F.R. § 292.203(b)(1); 18 C.F.R. § 292.205(a), (b), (d).

The second form of qualifying facility -- a "[s]mall power production facility" -- "produces electric energy solely by the use, as a primary energy source, of biomass, waste, renewable resources, geothermal resources, or any combination thereof."  16 U.S.C. § 796(17)(A).  See 16 U.S.C. § 824a-3(l).  This category accounts for, for instance, wind farms, dams, and solar energy facilities.  See 16 U.S.C. § 796(17)(A).  Congress limits PURPA's benefits to those facilities producing no more than eighty megawatts of energy at their sites.  See 16 U.S.C. § 796(17)(A). See 16 U.S.C. § 824a-3(l).  A small power production facility meets FERC's requirements for qualification on producing less than eighty megawatts, see 16 U.S.C. § 824a-3(l); 18 C.F.R. § 292.203(a)(1); 18 C.F.R. § 292.204(a)(1); deriving seventy-five percent or more of its energy input from "biomass, waste, renewable resources, geothermal resources, or any combination thereof," 18 C.F.R. § 292.204(b)(1)(i); see 16 U.S.C. § 824a-3(l); 18 C.F.R. § 292.203(a)(2); and filing a "notice of self-certification" unless exempted from such filing, see 16 U.S.C. § 824a-3(l); 18 C.F.R. § 292.203(a)(3); 18 C.F.R. § 292.207.

In implementing PURPA, FERC enacted prescriptions that address the unique challenges facing nontraditional energy sources.  See 18 C.F.R. § 292.304(d).  FERC provides that electric

utilities may purchase electric energy from qualifying facilities either as the energy becomes available for purchase or "pursuant to a legally enforceable obligation."[8] 18 C.F.R. § 292.304(d). FERC understands that investors in new technology need certainty in their returns. <u>See</u> FERC Order No. 69, Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of the Public Utility Regulatory Policies Act of 1978, 45 Fed. Reg. 12,213, 12,224 (Feb. 25, 1980)("FERC Order No. 69"). Energy utilities that purchase pursuant to a legally enforceable obligation may pay at the qualified facilities' choice either "[t]he avoided costs," <u>i.e.</u>, the cost to the electric utility of the energy that the utility would generate or purchase from another source, calculated on delivery, or "[t]the avoided costs calculated at the time the obligation is incurred." 18 C.F.R. § 292.304(d)(2). In allowing the option to have the energy utility pay the

---

[8]FERC provides:

Each qualifying facility shall have the option either:

(1) To provide energy as the qualifying facility determines such energy to be available for such purchases, in which case the rates for such purchases shall be based on the purchasing utility's avoided costs calculated at the time of delivery; or

(2) To provide energy or capacity pursuant to a legally enforceable obligation for the delivery of energy or capacity over a specified term, in which case the rates for such purchases shall, at the option of the qualifying facility exercised prior to the beginning of the specified term, be based on either:

(i) The avoided costs calculated at the time of delivery; or

(ii) The avoided costs calculated at the time the obligation is incurred.

18 C.F.R. § 292.304(d).

long-term avoided cost, FERC contemplates "contractual commitments based, by necessity, on estimates of future avoided costs." FERC Order No. 69 at 12,224

The statutory scheme in 16 U.S.C. § 824a-3 at the same time grants the states considerable authority in PURPA's field and constricts considerably states' authority in that field. See 16 U.S.C. § 824a-3(f); F.E.R.C. v. Mississippi, 456 U.S. at 759 (describing 16 U.S.C. § 824a-3(f) as "troublesome" because it requires states to implement FERC's regulations). Congress leaves implementation of the FERC regulations at the state level to the states but requires that the states implement the regulations that FERC passes. See Complaint ¶ 26, at 7; 16 U.S.C. § 824a-3(f). Deirdre O'Callaghan and Steve Greenwald recount that, in enacting PURPA,

> [t]he federal government identified and prioritized problems related to a matter of significant national interest (domestic energy supplies versus dependence on foreign oil) controlled at least in part by matters principally left to the states (retail rate regulation of public utility companies), and required the states to address matters central to these problems, but permitted them to do so in widely varying ways with widely varying results.

Deirdre O'Callaghan & Steve Greenwald, PURPA from Coast to Coast: America's Great Electricity Experiment, Nat. Resources & Env't 17 (Winter 1996)(characterizing PURPA as "one of the grand policy experiments of our generation"). States have "'great latitude in determining the manner of implementation of the Commission's rules, provided that the manner chosen is reasonably designed to implement the requirements' of FERC regulations." Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 385 (citing Regulations Implementing Section 210 of the Public Utility Regulatory Policies Act of 1978, 45 Fed. Reg. 12214, 12230-31 (Feb. 25, 1980)). A state may, for instance, implement PURPA and the FERC regulations through rulemaking or by adjudicating disputes that arise under the rules. See Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 385 (citing F.E.R.C. v. Mississippi, 456 U.S. at 759-60).

PURPA provides two means by which a party may challenge a state action in implementing or not implementing PURPA and the FERC regulations. <u>See</u> 16 U.S.C. § 824a-3(g)-(h).[9] The means applicable to the case depends on the challenge that the party brings. <u>See</u> 16 U.S.C. § 824a-3(g)-(h). A party bringing an as-applied challenge to a state's actions under PURPA must bring the challenge in a state court, which have exclusive jurisdiction.[10] <u>See</u> 16 U.S.C. § 824a-3(g). <u>See also</u> <u>Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex.</u>, 422 F.3d at 235; <u>Windway Techs., Inc. v. Midland Power Co-op.</u>, No. C00-3089MWB, 2001 WL 1248741, at *4 (N.D. Iowa March 5, 2001)(Bennett, J.). A party bringing an as-implemented challenge to a state's actions must bring the challenge first in an enforcement action before FERC. <u>See</u> 16 U.S.C. § 824a-3(h)(2)(B). <u>See also</u> <u>Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex.</u>, 422 F.3d at 235; <u>Niagara Mohawk Power</u>

---

[9]These provisions apply equally to nonregulated electric entities, on which PURPA imposes the same requirements to create rules implementing the PURPA and the FERC regulations that PURPA places on states. <u>See</u> 16 U.S.C. § 824a-3(f)-(h).

[10]Section 824a-3(g) of Title 16 of the United States Code directs that a party may obtain judicial review of state regulatory actions in the same circumstances that a party may obtain judicial review under 16 U.S.C. § 2633. <u>See</u> 16 U.S.C. § 824a-3(g). Section 2633 of Title 16 of the United States Code limits federal jurisdiction over cases to review of determinations that a federal agency made:

> Any person (including the Secretary) may obtain review in the appropriate court of the United States of any determination made under subchapter I or II or this subchapter by a Federal agency if such person (or the Secretary) intervened or otherwise participated in the original proceeding or if otherwise applicable law permits such review. Such court shall have jurisdiction to grant appropriate relief. Any person (including the Secretary) may bring an action to enforce the requirements of subchapter I or II or this subchapter with respect to any Federal agency in the appropriate court of the United States and such court shall have jurisdiction to grant appropriate relief.

16 U.S.C. § 2633.

Corp. v. F.E.R.C., 306 F.3d 1264, 1269 (2d Cir. 2002); Indus. Cogenerators v. F.E.R.C., 47 F.3d 1231, 1234 (D.C. Cir. 1995). If FERC does not initiate an enforcement action within sixty days or declines to initiate an action, the party may bring the challenge before a federal court. See 16 U.S.C. § 824a-3(h)(2)(B). See also Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 235; Indus. Cogenerators v. F.E.R.C., 47 F.3d at 1234. Only a federal court has jurisdiction to hear an as-implemented claim; a state court lacks such jurisdiction. See 16 U.S.C. § 824a-3(h)(1) (directing that rules implemented under PURPA should be treated as rules enacted under the Federal Power Act); 16 U.S.C. § 825m (describing that FERC challenges to rules enacted pursuant to the Federal Power Act are brought in federal courts); 16 U.S.C. § 825p (giving federal district courts exclusive jurisdiction over claims regarding violations of rules enacted under the Federal Power Act); 16 U.S.C. § 824a-3(h)(2)(B) (identifying federal district courts as the forum to bring claims challenging implementation of PURPA). See also Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 235; Indus. Cogenerators v. F.E.R.C., 47 F.3d at 1234.

"'An implementation claim involves a contention that the state agency . . . has failed to implement a lawful implementation plan under § 824a-3(f) of the PURPA.'" Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 235 (alterations in Power Res. Group, Inc. v. Klein)(quoting Power Res. Group, Inc. v. Klein, 2004 U.S. Dist. LEXIS 28820, at *16 (alterations in Power Res. Klein)). The category of as-implemented challenges includes more than contentions that a state agency has not acted to implement PURPA and the FERC regulations; a party may contend in an as-implemented claim that a state's actions to implement the laws violate PURPA and the FERC regulations. See 16 U.S.C. § 824a-3(h)(1); Exelon Wind 1, L.L.C.v. Nelson, 766 F.3d at 388-95; Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 239; N.Y. State

Elec. & Gas Corp. v. F.E.R.C., 117 F.3d 1473, 1476 (D.C. Cir. 1997); Swecker v. Midland Power Coop., No. 4:13-CV-00250-JEG, 2013 WL 11311233, at *4 (S.D. Iowa Dec. 30, 2013)(Gritzner, J.), aff'd sub nom. Swecker v. Midland Power Coop., 807 F.3d 883 (8th Cir. 2015); JD Wind 1, L.L.C. v. Smitherman, No. A-09-CA-917-SS, 2010 WL 3703119, at *5-7 (W.D. Tex. Sept. 14, 2010)(Hulme, J.); Occidental Chem. Corp. v. La. Pub. Serv. Comm'n, 494 F. Supp. 2d 401, 409-11 (M.D. La. 2007)(Brady, J.); N.Y. State Elec. & Gas Corp. v. Saranac Power Partners L.P., 117 F. Supp. 2d 211, 242 (N.D.N.Y. 2000)(Mordue, J.), aff'd, 267 F.3d 128 (2d Cir. 2001). PURPA permits suits when a state fails to implement the FERC regulations in accordance with 16 U.S.C. § 824a-3(f)(1)'s requirements, and most courts treat a failure to comply with PURPA and the FERC regulations as such a failure to implement. See 16 U.S.C. § 824a-3(f)(1), (h)(1); Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 388-95 (assuming that a state regulatory action violating PURPA and the FERC regulation can form the basis for an as-implemented claim); Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 239 (same);[11] N.Y. State Elec. & Gas Corp. v. F.E.R.C., 117 F.3d at 1476 ("The failure of a state commission to ensure that a rate does not exceed a utility's avoided cost is a failure to comply with a regulation implementing the

_____

[11]Although the Fifth Circuit did not reach a holding on jurisdiction in Power Resources Group Inc. v. Public Utility Commission of Texas, 422 F.3d 239, and instead summarized the district court's conclusions about jurisdiction under PURPA, see 422 F.3d at 235-36, in Exelon Wind 1, L.L.C. v. Nelson, the Fifth Circuit adopted all the statements about jurisdiction it made in Power Resources Group Inc. v. Public Utility Commission of Texas as precedential and confirmed that, in Power Resources Group Inc. v. Public Utility Commission of Texas, the Fifth Circuit would have reached the same conclusions as the district court had the Fifth Circuit reached a holding, see Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 393 ("[A]ssuming arguendo that we were not bound by the jurisdictional determination in Power Resource III, we would conclude that the delineation drawn by the district court in Power Resource II between implementation and as-applied challenges is a persuasive reading of PURPA's text, and would follow the same approach here.").

PURPA."); <u>Swecker v. Midland Power Coop.</u>, 2013 WL 11311233, at \*4 (assuming that as-implemented challenges arise when a PURPA or FERC regulation violation occurred); <u>JD Wind 1, L.L.C. v. Smitherman</u>, 2010 WL 3703119, at \*5-7 (assuming that as-implemented challenges apply to perceived violations of PURPA); <u>Occidental Chem. Corp. v. La. Pub. Serv. Comm'n</u>, 494 F. Supp. 2d at 409-11 (assuming that a party raises an as-implemented challenge by arguing about purported PURPA violations); <u>N.Y. State Elec. & Gas Corp. v. Saranac Power Partners L.P.</u>, 117 F. Supp. 2d at 242 ("Since [New York State Electric and Gas Co.] complains herein about [New York Public Service Commission's] inconsistency with both PURPA as well as FERC's regulations, it asserts the existence of district court jurisdiction pursuant to PURPA Section 210(h)(2)(A)."). <u>Accord</u> <u>Indep. Power Producers of N.Y., Inc.</u>, 80 FERC ¶ 61125, 61397 (July 30, 1997)("We have interpreted this section to encompass 'situations where State regulatory authorities . . . are alleged to . . . have promulgated regulations which are inconsistent with or contrary to the Commission's regulations.'" (quoting FERC Policy Statement at 61,644)). <u>Contra</u> <u>Mass. Inst. of Tech. v. Mass. Dep't of Pub. Utilities</u>, 941 F. Supp. at 237 ("In this case, the state agency -- [Massachusetts Department of Public Utilities ('MDPU')] -- has devised an implementation plan. It follows that MDPU has fulfilled its obligation to implement, as defined in the FERC opinion, because MDPU has "enact[ed] laws or regulations at the State level.").

As-implemented challenges attack rules or practices of general applicability for violating PURPA or the FERC regulations. <u>See</u>, <u>e.g.</u>, <u>Exelon Wind 1, L.L.C. v. Nelson</u>, 766 F.3d at 393; <u>Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex.</u>, 422 F.3d at 233; <u>Winding Creek Solar L.L.C. v. Peevey</u>, 293 F. Supp. 3d at 983; <u>Occidental Chem. Corp. v. La. Pub. Serv. Comm'n</u>, 494 F. Supp. 2d at 409-11; <u>N.Y. State Elec. & Gas Corp. v. Saranac Power Partners L.P.</u>, 117 F. Supp.

2d at 219, 242.  In a paradigmatic as-implemented challenge, a party asks a court to conclude that a rule that a state agency adopts through a regulation, notice, or similar means, violates PURPA and the FERC regulations.  See, e.g., Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 393; Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 233; Winding Creek Solar L.L.C. v. Peevey, 293 F. Supp. 3d at 983.  In Exelon Wind 1, L.L.C. v. Nelson, the Fifth Circuit reasoned that claims challenging a PUCT rule's lawfulness were as-implemented challenges where, in the claims, the facility "ask[ed] for a declaration that," contrary to the PUCT rule, "all Qualifying Facilities may form Legally Enforceable Obligations, and request[ed] that the court issue an injunction requiring the PUC[T] to fully implement FERC's regulations."  766 F.3d at 393.  The Fifth Circuit added that "[e]ither form of relief would necessarily require the PUC[T] to alter its current rules."  Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 393.  Likewise, in Power Resource Group, Inc. v. Public Utility Commission of Texas, wherein the PUCT "determined that because its rules implementing PURPA provide for a legally enforceable obligation only if a facility is within ninety days of delivering power, [the electric utility in the case] had no obligation to purchase power from [the qualifying facility]," Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 233, the Fifth Circuit upheld the district court's determination that whether the rule properly implemented PURPA was an as-implemented challenge, see 422 F.3d at 236.  Accord Winding Creek Solar L.L.C. v. Peevey, 293 F. Supp. 3d at 983 (assuming that a claim that CPUC orders creating a Renewable Market-Adjusting Tariff program violated PURPA and the FERC regulations was an as-implemented challenge).

Courts have likewise deemed claims that challenge a state agency's established methodology for calculating avoided cost rates to raise as-implemented challenges.  See N.Y. State

Elec. & Gas Corp. v. F.E.R.C., 117 F.3d at 1476 ("The alleged failure of the [New York Public Service Commission] to set the contested rates at [New York State Electric & Gas Corp.'s] avoided cost would ordinarily be challenged through an enforcement action brought in district court under [16 U.S.C. § 824a-3(h)]."). N.Y. State Elec. & Gas Corp. v. Saranac Power Partners L.P., 117 F. Supp. 2d at 219, 242 (concluding that an energy utility brought an as-implemented challenge where it argued that the New York Public Service Commission's "generic guidelines" for calculating a utility's avoided costs resulted in the energy utility entering contracts for energy at a rate that violated PURPA). In Occidental Chemical Corp. v. Louisiana Public Service Commission, for instance, wherein a plaintiff argued "that[,] by approving the new methodology for calculating avoided costs, the [Louisiana Public Service Commission] has failed to faithfully implement the rules prescribed by the FERC, as required by federal law," and alleged that the Louisiana Public Service Commission systemically underestimated avoided costs and failed to implement PURPA's definition of avoided costs, the Honorable James Brady, now-Senior United States District Judge for the Middle District of Louisiana, concluded that the plaintiff raised as-implemented challenges. Occidental Chem. Corp. v. La. Pub. Serv. Comm'n, 494 F. Supp. 2d at 409-11. Judge Brady relied on the Fifth Circuit's reasoning in Power Resource Group, Inc. v. Public Utility Commission of Texas and concluded that the plaintiff's complaints affected entities other than solely the petitioner. See Occidental Chem. Corp. v. La. Pub. Serv. Comm'n, 494 F. Supp. 2d at 411.[12]

---

[12]Where a plaintiff sues a nonregulated electric utility, a claim that the electric utility's rate schedules and calculations violate PURPA is an as-implemented claim. See Swecker v. Midland Power Coop., 2013 WL 11311233, at *4 (concluding that a qualifying facility brings an as-implemented challenge where a qualifying facility asks the defendant to change the methodology for calculating all rates -- a request that applies to all qualifying facilities); ConocoPhillips Co. v. Dep't of Water & Power, City of L.A, 2008 WL 11422174, at *3-4 (treating claims that rate

"'An as-applied claim involves a contention that the state agency's . . . implementation plan is unlawful, as it applies to or affects an individual petitioner.'" <u>Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex.</u>, 422 F.3d at 235 (alterations in <u>Power Res. Group, Inc. v. Klein</u>)(quoting <u>Power Res. Group, Inc. v. Klein</u>, 2004 U.S. Dist. LEXIS 28820, at *16). As-applied claims include those claims in which a party contests how a state agency applied the state's regulations to the party. <u>See</u> <u>Mass. Inst. of Tech. v. Mass. Dep't of Pub. Utilities</u>, 941 F. Supp. at 237-38 (concluding that a qualified facility brought an as-applied claim where the facility argued that it should be immune from a regulation based on its status as a qualified facility). In <u>Power Resource Group, Inc. v. Public Utility Commission of Texas</u>, for instance, the Fifth Circuit upheld the district court's dismissal of a claim wherein a qualifying facility requested injunctive relief from a PUCT order interpreting and applying a PUCT rule requiring, for a legally enforceable obligation to begin, a qualified facility to be capable of providing energy within ninety days of notifying the electric utility that the qualifying facility could deliver power. <u>See</u> <u>Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex.</u>, 422 F.3d at 234, 236, 239. <u>See also</u> <u>Exelon Wind 1, L.L.C. v. Nelson</u>, 766 F.3d at 393.

---

schedules violate PURPA and the FERC regulations as as-implemented challenges). <u>Contra</u> <u>Windway Techs., Inc. v. Midland Power Coop.</u>, 2001 WL 1248741, at *6 (concluding that the plaintiffs raised an as-applied challenge where the plaintiffs argued that the tariffs that the defendant applied to them violated PURPA, but "explicitly state[d] that the present action is not an action to enforce PURPA" and did not seek to enforce PURPA, but rather "insist[ed] that this [was] an action for damages, alleging as one of the predicate acts causing such damages a violation of the PURPA").

In Exelon Wind 1, L.L.C. v. Nelson, the Fifth Circuit similarly declined to interpret a challenge to a PUCT order as an as-implemented claim. See 766 F.3d at 390-91. The Fifth Circuit explained that

> Exelon asked the district court for a declaration that the PUC[T] Order did not implement FERC's Regulation and is preempted. . . . Exelon also asked the district court to declare that the PUC[T] must reopen Exelon's proceedings for further consideration, and to issue an injunction prohibiting the PUC[T] from enforcing the PUC[T] Order.

766 F.3d at 390. The Fifth Circuit described these challenges as "'contention[s] that the state agency's . . . implementation plan is unlawful, as it applies to or affects an individual petitioner'" that were "thus as-applied challenges over which we have no jurisdiction." 766 F.3d at 390 (quoting Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 235). The Fifth Circuit focused on the PUCT decision's language:

> The [administrative law judge] found that wind-generated power is not readily available. The Commission disagrees with this broad statement encompassing all wind-generated power. The Commission notes that disparate wind patterns in the diverse geographic regions of the state can result in significantly different characteristics for wind-generated power. Further combining wind with energy storage techniques or other energy sources, like solar energy, can also result in significant differences.

Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 390-91. The Fifth Circuit stated regarding the language: "The PUC[T] thus left open the possibility that other wind generators might be able to comply with the firm power requirement, either through technological advances or based on their locations in regions with more predictable wind patterns than those found around the Exelon facilities." 766 F.3d at 391. The Fifth Circuit reasoned that

> the fact that as-applied challenges may establish precedent relevant to future cases does not transform them into facial or implementation challenges. Courts routinely adjudicate as-applied constitutional challenges to statutes; these decisions do not

become facial challenges simply because of their *stare decisis* effect in future cases presenting similar facts or legal theories.

766 F.3d at 391.  Contra JD Wind 1, L.L.C. v. Smitherman, 2010 WL 3703119, at *4-7 (concluding that a qualifying facility alleged an as-implemented challenge where the facility argued that the PUCT's order concluding that a wind facility could not create a legally enforceable obligation "due to the intermittent availability of wind" violated PURPA).

## ANALYSIS

The Court grants the MTD in part and denies it in part.  Preliminarily, Great Divide does not dispute the Commission's points about 28 U.S.C. § 1331's general grant of subject-matter jurisdiction controlling over PURPA's specific grant of subject-matter jurisdiction or about the Declaratory Judgment Act not providing independent jurisdictional grounds, so the Court does not deem these allegations at issue here.  See MTD at 20-21.  The parties' dispute revolves around the as-applied/as-implemented issue.  The Court concludes that the Complaint challenges neither rule 570's lawfulness nor the lawfulness of the NMPRC's interpretation of rule 570, and rather brings a claim for relief from the NMPRC's application of its law to Great Divide.  The Court concludes, accordingly, that Great Divide brings only as-applied claims.[13]  Should Great Divide amend the

---

[13]The Court gives no binding weight to the FERC Order.  The Court has an obligation to determine its own subject-matter jurisdiction; neither FERC's conclusions about Great Divide' claim nor the Commission' arguments before FERC bind the Court.  See, e.g., Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 392 (concluding that federal courts should not defer to the agency's jurisdictional determinations (citing Shweika v. Dep't of Homeland Sec., 723 F.3d 710, 719 (6th Cir. 2013); Lopez-Elias v. Reno, 209 F.3d 788, 791 (5th Cir. 2000); Reeb v. Econ. Opportunity Atlanta, Inc., 516 F.2d 924, 926 (5th Cir. 1975)); Verizon Md., Inc. v. Glob. NAPS, Inc., 377 F.3d 355, 383 (4th Cir. 2004).  FERC made, moreover, no conclusion about the Court's jurisdiction in the FERC Order.  See FERC Order ¶ 18, at 7.  FERC stated: "Great Divide thus may bring its own enforcement action against the New Mexico Commission in the appropriate United States district court," and this comment more likely indicates that Great Divide satisfied § 864a-3(h)'s

Complaint to state clearly its theory of the case as challenging rule 570 or the NMPRC's interpretation of rule 570, the Court has jurisdiction; otherwise, the Court dismisses the case without prejudice.

## I. IN THE COMPLAINT, GREAT DIVIDE PLEADS ONLY AS-APPLIED CLAIMS BY FOCUSING ON THE N.M. ORDER'S EFFECTS ON GREAT DIVIDE'S RELATIONSHIP WITH EL PASO ELECTRIC.

The Court concludes that Great Divide brings only as-applied challenges in the Complaint. The Commission attacks the jurisdiction on the Complaint's face and does not "challenge . . . the actual facts upon which subject-matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d at 1180 ("On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true."). In the Complaint, Great Divide focuses on the N.M. Order's effects on it, including those effects on El Paso Electric's obligations to them. See Complaint ¶¶ 3-4, at 2-3; id. ¶ 31, at 8; id. ¶ 41, at 10; id. ¶¶ 57-58, at 13. Great Divide introduces the Complaint by explaining generally that it "file[s] this Complaint seeking an order of this Court declaring that the New Mexico Public Regulation Commission's Order, dated November 7, 2018, violates federal law and for injunctive relief." Complaint at 1. It introduces the case's facts by describing the N.M. Order's conclusion that El Paso Electric had no legally enforceable obligation to it:

> In 2018, Plaintiffs filed a formal complaint asking the NMPRC to order that EPE has a legally enforceable obligation to purchase the output of each Project for a 30-year term beginning in 2020, at EPE's avoided cost. On EPE's motion, the NMPRC dismissed Plaintiffs' complaint without holding any evidentiary hearings, ruling that Plaintiffs were not entitled to a legally enforceable obligation until the Projects were fully constructed and ready for interconnection.

---

exhaustion requirement than it reflects a conclusion about the Court's jurisdiction. See FERC Order ¶ 18, at 7.

Complaint ¶ 3, at 3. It continues the introduction by requesting relief from the N.M. Order:

> Plaintiffs respectfully request that this Court declare that the NMPRC's implementation of PURPA is unlawful and require the NMPRC to give full effect to federal law entitling Plaintiffs to a legally enforceable obligation for EPE's purchase of their output prior to the final construction of their wind farms and readiness to interconnect.

Complaint ¶ 4, at 3. In the claim for relief, Great Divide argues that the N.M. Order imposes improper obligations on Great Divide: "The NM Order violates PURPA and FERC regulations because it requires Plaintiffs to construct their facilities and obtain signed interconnection agreements as a prerequisite to the creation of a legally enforceable obligation." Complaint ¶ 53, at 12. Although Great Divide states in its claim for relief general requests for a "judgment declaring that the NMPRC Order violates PURPA and FERC's regulations," Complaint ¶ 57, at 13, and "injunctive relief requiring Defendants to issue orders consistent with federal law," Complaint ¶ 58, at 13, in the Prayer for Relief, Great Divide requests relief remedying the N.M. Order's specific effects on them -- a "[d]eclara[tion] that the NM Order violates PURPA and FERC regulations insofar as it places improper obligations on Plaintiffs before EPE is obligated to enter into a contract or other legally enforceable obligation to purchase the output of Plaintiffs' QFs for the specified term," Complaint ¶ a, at 13, and an injunction requiring the "Defendants to issue a new order implementing FERC's rules under PURPA in a manner consistent with federal law, ruling that Plaintiffs need not construct their Projects and obtain signed interconnection agreements as a prerequisite to the creation of a legally enforceable obligation," Complaint ¶ b, at 13. Great Divide also alleges: "The NMPRC Order did not respond to Plaintiffs' request that the NMPRC establish an avoided cost rate for the term of their commitment to sell power from the Projects to EPE, even by offering to resolve disputes between Plaintiffs and EPE regarding the

calculation of the avoided cost rate." Complaint ¶ 44, at 10.  To resolve the dispute, Great Divide requests an injunction "implementing a methodology for determining avoided energy costs calculated at the time the obligation is incurred or offering to resolve disputes between Plaintiffs and EPE regarding the calculation of an avoided cost rate."  Complaint ¶ b, at 13.

The Complaint does not challenge rule 570's lawfulness or the lawfulness of the NMPRC's interpretation of rule 570.  Great Divide complains about the N.M. Order's application of rule 570 and NMPRC caselaw to it, <u>see</u> Complaint ¶ 3, at 3; <u>id.</u> ¶ 4, at 3; <u>id.</u> ¶ 53, at 12; <u>id.</u> ¶¶ a-b, at 13, and wants relief from the N.M. Order as it affects itself, <u>see</u> Complaint ¶ 3, at 3; <u>id.</u> ¶ 4, at 3; <u>id.</u> ¶ 44, at 10; <u>id.</u> ¶ 54, at 12; <u>id.</u> ¶ 53, at 12; <u>id.</u> ¶¶ a-b, at 13.  The Complaint includes no allegations about rule 570 violating PURPA and the FERC regulations.  Great Divide's introduction to the Complaint asks, rather, that the Court deem the N.M. Order unlawful, <u>see</u> Complaint at 1; Great Divide's "Claims for Relief" revolve around the N.M. Order, <u>see</u> Complaint ¶¶ 48-59, at 13; and, in their "Prayer for Relief," Great Divide requests relief from the N.M. Order, <u>see</u> Complaint ¶¶ a-b, at 13.  That, at the hearing, Great Divide changed its theory of the Complaint, conceded that rule 570 on its face does not violate PURPA and the FERC regulations, and stated that the Complaint does not make such a claim, <u>compare</u> Tr. at 72:18-20 (Guy), <u>and id.</u> at 80:15-22 (Guy), <u>with</u> Response at 3, 8, 10, 18, shows even Great Divide's recognition that the Complaint does not attack rule 570 on its face.

Likewise, the Complaint does not clarify that the regulatory action that violates PURPA and the FERC regulations is the NMPRC's interpretation of rule 570.  Great Divide does not allege, as it did at the hearing, the interpretation's role in the NMPRC's violation of PURPA, and, at no point in the Complaint, explains its distinction from the hearing between rule 570 and the

NMPRC's interpretation of rule 570.  See Tr. at 78:23-79:8 (Guy)(opining that the NMPRC first reached an unlawful interpretation of rule 570 in the Western Water and Power case).  Great Divide mentions once that rule 570 does not include the words "legally enforceable obligation":

> The words "legally enforceable obligation" do not appear anywhere in Rule 570, either as a defined term or otherwise.  Nor does Rule 570 directly address the concept of a PURPA-mandated legally enforceable obligation, or recognize that under PURPA, a QF is entitled to elect the determination of an avoided cost rate at the time the obligation is incurred, *i.e.*, a long-term avoided cost rate.  *See* NM Order ¶ 8 (acknowledging that a Notice of Proposed Rulemaking was issued to address gaps in implementation of PURPA but was never acted upon).

Complaint ¶ 31, at 8.  It likewise discusses once, in describing the facts giving rise to the claim, the NMPRC's role in interpreting rule 570: "The NMPRC, relying on its prior holding in WWPP, interpreted Rule 570 to mean that QFs must be ready to interconnect and deliver energy before any legally enforceable obligation may be created to purchase the power at avoided cost rates." Complaint ¶ 41, at 10 (citing N.M. Order ¶¶ 8-9, at 2-3; id. ¶ 17, at 6).  Rather than focus on the NMPRC's interpretation, Great Divide repeatedly returns to the N.M. Order's effects on the Projects.  See, e.g., Complaint ¶ 53, at 12 ("The NM Order violates PURPA and FERC regulations because it requires Plaintiffs to construct their facilities and obtain signed interconnection agreements as a prerequisite to the creation of a legally enforceable obligation.").

Furthermore, Great Divide's claim that the NMPRC failed to "develop any methodology for determining avoided energy cost calculated at the time the obligation is incurred between Plaintiffs and EPE or to offer to resolve disputes between Plaintiffs and EPE regarding the calculation of the avoided cost rate" challenges neither rule 570 nor the NMPRC's interpretation of rule 570.  Complaint ¶ 54, at 12.  Great Divide offers no rationales for how this claim attacks the NMPRC's implementation plan.  Great Divide discusses in the Response and discussed at the

hearing respectively rule 570's requirements for readiness to interconnect, see Response at 3, 8, 10, 18, 20, and the NMPRC's interpretation imposing the same requirements, see, e.g., Tr. at 80:15-22 (Guy); id. at 78:23-79:8 (Guy), but this claim about methodology addresses the NMPRC's decision not to provide a methodology after it had concluded that the Projects were not ready for interconnection.

Great Divide could have stated -- but did not state -- an as-implemented challenge. It might have alleged that rule 570 violated PURPA and the FERC regulations, or that the NMPRC's interpretation, beginning with the Western Water and Power case, violated the federal laws. It could have asked for relief declaring rule 570 invalid or declaring the NMPRC's interpretation of rule 570 invalid. It might have asked for an order "[d]eclaring that the NM Order violates PURPA and FERC regulations insofar as it" interprets rule 570 not to impose a legally enforceable obligation on electric utilities before a qualifying facility is ready to interconnect, and enjoining the NMPRC to reach an interpretation consistent with PURPA and the FERC regulations. Complaint ¶ a, at 13. Instead, Great Divide asks that the Court deem the N.M. Order unlawful to the extent it "places improper obligations Plaintiffs before EPE is obligated to enter into a contract or other legally enforceable obligation to purchase the output of Plaintiffs' QFs for the specified term" and asks that the Court enjoin the NMPRC for a new order "implementing FERC's rules under PURPA in a manner consistent with federal law, ruling that Great Divide need not construct their Projects." Complaint ¶¶ a-b, at 13. Great Divide cannot articulate a cohesive theory explaining how the allegations in its Complaint attacks the NMPRC's implementation plan, because the Complaint does not target the regulatory actions creating the generally applicable rule that Great Divide opposes. The Complaint seeks relief from an application of law to fact -- that

the NMPRC decided that El Paso Electric had no legally enforceable obligation to Great Divide and, once it reached this conclusion, the NMPRC had no need to calculate El Paso Electric's avoided cost rate. See Complaint ¶ 3, at 3; id. ¶ 4, at 3; id. ¶ 44, at 10; id. ¶ 54, at 12; id. ¶ 53, at 12; id. ¶¶ a-b, at 13.

Great Divide, therefore, brings an as-applied challenge. The parties focus on the N.M. Order as it applies to them, like the parties complaining about the PUCT's orders in Power Resource Group, Inc. v. Public Utility Commission of Texas and Exelon Wind 1, L.L.C. v. Nelson. See Complaint ¶ 3, at 3; id. ¶ 4, at 3; id. ¶ 53, at 12; id. ¶¶ a-b, at 13. See also Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 390-91, 393; Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 234, 236, 239. Like the petitioner in Exelon Wind 1, L.L.C. v. Nelson, who "asked the district court for a declaration that the PUC[T] Order did not implement FERC's Regulation and is preempted . . . [and] to declare that the PUC[T] must reopen Exelon's proceedings for further consideration, and to issue an injunction prohibiting the PUC[T] from enforcing the PUC[T] Order," 766 F.3d at 390, Great Divide's request for relief is limited to relief from the N.M. Order's immediate harm to itself, see Complaint ¶ 3, at 3; id. ¶ 4, at 3; id. ¶ 44, at 10; id. ¶ 54, at 12; id. ¶ 53, at 12; id. ¶¶ a-b, at 13. The NMPRC might have misinterpreted its rule by ignoring the rule's purpose in implementing lawfully PURPA and the FERC regulations, but this scenario is the definition of an as-applied challenge -- it affects one petitioner because of the facts in and the progress of that petitioner's case. See Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 235 (alterations in Power Res. Group, Inc. v. Klein)(quoting Power Res. Group, Inc. v. Klein, 2004 U.S. Dist. LEXIS 28820, at *16). Great Divide brings a claim that "the state agency's . . . implementation plan is unlawful, as it applies to or affects an individual petitioner.'"

Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 235 (alterations in Power Res. Group, Inc. v. Klein)(quoting Power Res. Group, Inc. v. Klein, 2004 U.S. Dist. LEXIS 28820, at *16).

Great Divide's arguments to the contrary do not persuade the Court. Winding Creek Solar L.L.C. v. Peevey is inapposite here, because that case involved challenges to regulatory orders that themselves created a regulatory scheme. See Response at 7. See also Winding Creek Solar L.L.C. v. Peevey, 293 F. Supp. 3d at 983. Great Divide's arguments about Power Resource Group, Inc. v. Public Utility Commission of Texas and Exelon Wind 1, L.L.C. v. Nelson likewise miss the mark. See Response at 16-18. See also Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 393; Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 233, 236. In both cases, although the petitioners suffered individual injuries from the PUCT's orders, the Fifth Circuit characterized only the petitioners' challenges to the PUCT's rules as as-implemented challenges. The Court understands that plaintiffs must establish actual injuries to have standing, see Response at 15, but, as demonstrated in, for instance, Power Resource Group, Inc. v. Public Utility Commission of Texas and Exelon Wind 1, Ltd. Liab. Co. v. Nelson, a party may have individual injuries and still allege an as-implemented claim, see Exelon Wind 1, Ltd. Liab. Co. v. Nelson, 766 F.3d at 386-87; Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 233-34.

## II.     GREAT DIVIDE COULD BRING THE THEORY IT ARTICULATED AT THE HEARING AS AN AS-IMPLEMENTED CHALLENGE OVER WHICH THE COURT WOULD HAVE JURISDICTION.

Great Divide could file an amended complaint that adequately alleges an as-implemented challenge. In the Court's view, a petitioner could challenge an NMPRC order in an as-implemented challenge, although Great Divide has not stated such a claim in the Complaint. The

statute does not define an as-implemented challenge. The statute provides FERC and federal district courts jurisdiction over "an action against the State regulatory authority or nonregulated electric utility for failure to comply with the requirements of subsection (f)," 16 U.S.C. § 824a-3(h)(2)(A)(i), and subsection f directs only:

> Beginning on or before the date one year after any rule is prescribed by the Commission under subsection (a) or revised under such subsection, each State regulatory authority shall, after notice and opportunity for public hearing, implement such rule (or revised rule) for each electric utility for which it has ratemaking authority.

16 U.S.C. § 824a-3(f)(1). Courts have described an as-implemented challenge: "'[a]n implementation claim involves a contention that the state agency . . . has failed to implement a lawful implementation plan under § 824a-3(f) of the PURPA.'" Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 235 (alterations in Power Res. Group, Inc. v. Klein)(quoting Power Res. Group, Inc. v. Klein, 2004 U.S. Dist. LEXIS 28820, at *16). In the Court's view, the state's responsibility to implement PUPRA and the FERC regulations implicates the entire body of generally applicable law that implements PURPA and the FERC regulations. See, e.g., Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 393; Power Res. Grp., Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d at 233; Winding Creek Solar L.L.C. v. Peevey, 293 F. Supp. 3d at 983; Occidental Chem. Corp. v. La. Pub. Serv. Comm'n, 494 F. Supp. 2d at 409-11; N.Y. State Elec. & Gas Corp. v. Saranac Power Partners L.P., 117 F. Supp. 2d at 219, 242. As the Supreme Court recognized in F.E.R.C. v. Mississippi, adjudication is a form of implementation. See F.E.R.C. v. Mississippi, 456 U.S. at 760. In interpreting the state's implementation of PURPA and the FERC regulations, thus, a court cannot say that, after a court interprets a facially valid rule in a wholly invalid manner, the facially valid rule remains valid. Declaring the rule as interpreted invalid remedies the harms

the interpretation causes, so a challenge explicitly to the rule and its interpretation effectuates a challenge to the unlawful rule.

The Fifth Circuit's language about precedent in <u>Exelon Wind 1, L.L.C. v. Nelson</u> does not dissuade the Court from this view. In <u>Exelon Wind 1, L.L.C. v. Nelson</u>, the Fifth Circuit confronted a PUCT order that applied a fact-intensive analysis under a PUCT rule. <u>See</u> 766 F.3d at 390-91. The PUCT order did not declare a rule's or regulation's meaning, and did not even reach a narrow holding; as the Fifth Circuit noted, "[t]he PUC[T] thus left open the possibility that other wind generators might be able to comply with the firm power requirement, either through technological advances or based on their locations in regions with more predictable wind patterns than those found around the Exelon facilities." 766 F.3d at 391. Moreover, the Fifth Circuit's analogy between PURPA as-implemented challenges and facial constitutional challenges is not wholly apt. Petitioners challenging states or state agencies under PURPA can do more than appeal a decision to a reviewing body; PURPA gives reviewing bodies authority to review how a state implements PURPA and the FERC regulations, and decisions interpreting rules necessarily build on the scheme implementing those statutes. Congress specifically gave federal entities -- FERC and federal district courts -- authority to review state agencies' implementations, so it designed a statutory scheme by which federal entities, removed from the pressures of state politics, could intervene in the state's plans. Appellate courts have no like authority to review a district court's systemic implementation of the Constitution of the United States of America; they belong to a judicial system designed to resolve disputes and not implement a complex regulatory scheme, and must review as-applied and facial constitutional challenges on the challenged issue's merits.

Accordingly, the Court reasons that Great Divide's theories from the Response and the hearing -- respectively, that Rule 570 violates PURPA and the FERC regulations, and that the NMPRC's interpretation of rule 570 violates PURPA and the FERC regulations -- raise as-implemented challenges. Great Divide could bring either theory and satisfy this Court's jurisdictional requirements. If the interpretation of rule 570 is now part of New Mexico's "plan" for implementing PURPA, it can be challenged like the rule itself; it is part of the "plan" that implements PURPA. As the Commission has not filed an answer in this case, Great Divide may amend its Complaint as of right to bring such a claim. See Fed. R. Civ. P. 15(a)(1)(B). The Court understands that Great Divide might worry that challenging rule 570 will result in an extended rulemaking process which will not provide Great Divide expedited relief. The theory about the NMPRC's interpretation might also not give Great Divide the relief it desires, given the tight time restrictions that Great Divide faces and the possibility that, if the Court deems the NMPRC's interpretation unlawful, implementing the Court's declaration might nevertheless require a rulemaking if the NMPRC determines that it properly interpreted rule 570's plain meaning and deems rule 570 itself unlawful. The Court, nevertheless, would have jurisdiction over a theory challenging the NMPRC's interpretation of rule 570 or directly challenging rule 570. Accordingly, the Court grants the MTD in part and denies it in part. Should Great Divide amend the Complaint to clearly state its theory of the case as challenging rule 570 or the NMPRC's interpretation of rule 570, the Court would have jurisdiction; otherwise, the Court dismisses the case without prejudice.

**IT IS ORDERED** that: (i) Defendant Theresa Becenti Aguilar's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 19), Defendant Jefferson Byrd's Defendatns' Joint Motion to Dismiss and Memorandum of Law in

Support Thereof, filed March 1, 2019 (Doc. 20), Defendant Valerie Espinoza's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 21), Defendant Stephen Fischmann's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 22), and Defendant Cynthia Hall's Defendants' Joint Motion to Dismiss and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 23), are granted in part and denied in part; (ii) Great Divide may amend the Great Divide's Complaint for Declaratory and Injunctive Relief, filed February 6, 2019 (Doc. 1)("Complaint"), to state clearly its theory of the case as challenging the rule 570 of the New Mexico Administrative Code, promulgated by the New Mexico Public Regulation Commission ("NMPRC"), or the NMPRC's interpretation of rule 570 so that the Court has jurisdiction; and (iii) otherwise, the Court lacks jurisdiction over this Complaint, and the case is dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jason A. Marks
Jason Marks Law, LLC
Albuquerque, New Mexico

--and--

Adam Wenner
Cory Lankford
Jonathon Guy
Orrick, Herrington & Sutcliff, LLP
Washington, D.C.

      *Attorneys for the Plaintiffs*

Judith E. Amer
New Mexico Public Regulation Commission
Santa Fe, New Mexico

*Attorneys for the Defendants Theresa Becenti Aguilar, Cynthia Hall, Jefferson Byrd,
Valerie Espinoza, and Stephen Fischmann*

Ron Moss
Winstead PC
Austin, Texas

--and--

Carol A. Clifford
Jerry Todd Wertheim
Jones, Snead, Wertheim & Clifford, P.A.
Santa Fe, New Mexico

*Attorneys for the Proposed Intervenor El Paso Electric Company*