# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GREAT DIVIDE WIND FARM 2 LLC, a
Delaware corporation, and GREAT DIVIDE
WIND FARM 3 LLC, a Delaware corporation,

        Plaintiffs,

vs.

THERESA BECENTI AGUILAR,
CYNTHIA HALL, JEFFERSON BYRD,
VALERIE ESPINOZA, and STEPHEN
FISCHMANN, in their official capacities
as the Commissioners of the New Mexico
Public Regulation Commission, and EL
PASO ELECTRIC COMPANY,

        Defendants,

and

SOUTHWESTERN PUBLIC SERVICE
COMPANY,

        Intervenor-Defendant.

No. CIV 19-0099 JB\CG

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendants' Motion to Disqualify,

filed March 1, 2019 (Doc. 18)("Motion"); and (ii) the Defendants' Amended Motion to Disqualify

Jason Marks, Esq and Motion to Stay on March 6, 2019 (Doc. 25)("Amended Motion"). The

Court held a hearing on April 12, 2019. The primary issue is whether the Court should disqualify

Jason Marks because Jason Marks' representation of the Plaintiffs, Great Divide Wind Farm 2

LLC and Great Divide Wind Farm 3, LLC, (collectively, "Great Divide"), without the written

consent of the Defendants Theresa Becenti Aguilar, Jefferson Byrd, Valeria Espinoza, Stephen Fischmann, and Cynthia Hall (collectively, "the Commissioners"), where Mr. Marks served as a fellow Commissioner on the New Mexico Public Regulation Commission ("NMPRC"), violates rule 16-111(A)(2) NMRA of the New Mexico Rules of Professional Conduct. Rule 16-111(A)(2) forbids former government employees from representing clients in matters that they participated in during their tenure as government employees. Because rulemaking is not a "matter" under rule 16-111(A)(2) and Mr. Marks was not substantially involved in the rulemaking proceedings, the Court concludes that Mr. Marks' representation of Great Divide does not violate rule 16-111(A)(2). Moreover, the Court uses its flexibility in managing its docket to deny the stay, which will not harm the Commissioners who do not contend that there is even a shadow of impropriety.

## FINDINGS OF FACT

1.      Mr. Marks served as an NMPRC Commissioner from January 1, 2005, through December 31, 2012. <u>See</u> Motion ¶ 3, at 3.

2.      He was the NMPRC Chairman in 2008.[1]  <u>See</u> Jason A. Marks, Ballotpedia, available at https://ballotpedia.org/Jason_A._Marks (last visited Nov. 11, 2019).

3.      During his tenure as an NMPRC commissioner, the NMPRC "issued final dispositive orders concerning the Commission's Rule 570," Motion ¶ 3, at 3, the combined rulemaking cases <u>In the Matter of an Inquiry Into Interconnection Standards for Electric Utilities</u>, No. 07-0014-UT (NMPRC Nov. 20, 2007), filed March 6, 2019 (Doc. 25-1), and <u>In the Matter of</u>

---

[1]None of the parties detail Mr. Marks' tenure as Chairman. Great Divide does not address it, and the Defendants say only that Mr. Marks "was Chairman of the Commission during the relevant time periods as detailed below." Motion  ¶ 3, at 3. It is unclear what the relevant time periods are. The Court, therefore, has conducted its own research to support  this finding of fact.

a Rulemaking Relating to Interconnection Standards for Electric Utilities and the Repeal of Rule Promulgated Relating to Interconnection Standards for Electric Utilities and the Repeal of Rule Promulgated Pursuant to the Electric Utility Industry Restructuring Act of 1999, No. 07-0422-UT (NMPRC Nov. 20, 2007), filed March 6, 2019 (Doc. 25-1)(collectively, "Combined Rulemaking Cases"). Motion ¶ 5 at 5-6.

4. Rule 570 was promulgated in 1988. See Response in Opposition re Motion to Disqualify Counsel at 8, filed March 15, 2019 (Doc. 28)("Response").

5. Rule 570.9's language is the same as it was in 1988. See Response at 8 (citing Case No. 2149, Third Revisions to General Order 37, March 10, 1988).

6. On November 15, 2006, Mr. Marks, who was an NMPRC Commissioner at the time, was the hearing officer for the Notice of Proposed Rulemaking in In the Matter of the Inquiry into the Provision of Net Metering Services by Public Utilities, No. 06-02241-UT (NMPRC Sept. 7, 2006), filed March 6, 2019 (Doc. 25-1)("NOPR for Provision of Net Metering"). Motion ¶ 5 at 5.

7. This NOPR for Provision of Net Metering was meant to revise rule 571 and Section 10 of rule 570. See Motion ¶ 5, at 5; id. at 5 n.2 (stating that the proposed rule 570 revision was " a modification . . . to allow net metering on a billing cycle basis contained in section 10 of Rule 570"); Response at 2.

8. The final order in that case adopted rule 570.9 without alteration. See Motion at 5 n.2.

9. When Mr. Marks was the NMPRC Chairman, he signed the final order in the combined rulemaking cases. Motion ¶ 5 at 5-6.

10.     These combined cases were about the "interconnection by electric utilities with customer-owned generation facilities." Amended Motion at 25-1. <u>See</u> Response at 8 (stating "that the subject of the 2006-07 rulemakings were Rules 570.10 & .15, both concerned with 'net metering' of customer-owned generation"); Motion ¶ 5, at 6 (stating that the combined cases "amended Rule 570 NMAC for the purpose of producing detailed interconnection standards for electric utilities").

11.     On July 29, 2008, Mr. Marks, as Chairman of the NMPRC, signed the final order in the Combined Rulemaking Cases. <u>See</u> Motion ¶ 5, at 6.

12.     The Final Order in the combined cases adopted, but did not alter, rule 570.9. <u>See</u> Motion ¶ 5, at 6.

13.     Mr. Marks is not listed as a participant in the public hearing for the 2006-2007 rulemaking. <u>See</u> Response at 7 (citing Motion at 1-162).

14.     Great Divide's Amended Complaint for Declaratory and Injunctive Relief, filed May 30, 2019 (Doc. 56)("Amended Complaint") raised an "as-implemented" challenge. <u>Great Divide v. Aguilar, et. al.</u> Memorandum and Opinion, 2019 WL 5847060, No. CIV 19-0099 JB\CG at 2 (Nov. 7, 2019)(Doc. 89).

15.     In 2015, under N.M. Stat. Ann. § 8-8-19(E) (1978),[2] Mr. Marks became eligible to participate in cases before the NMPRC. <u>See</u> Response at 9.

---

[2]NMSA 1978 § 8-8-19(E) states

    E. After leaving the commission:

16.     Mr. Marks acted as counsel in a 2015 case in which he based arguments on rule 570.7, rule 570.10, and rule 570.14.   <u>See</u> Response at 9 (citing Case 15-00127-UT (NMPRC, 2015).

17.     The NMPRC did not object to Mr. Marks acting as counsel in the 2015 case.  <u>See</u> Response at 9.

18.     Mr. Marks also "appeared before the Commission in a matter related to rule 570 (again rooftop solar surcharges)."  Response at 9 (citing Case No. 17-00255-UT (NMPRC, 2017)).

19.     In the 2017 case, the Commission raised a conflict of interest in a show cause order, but voted three-to-two against finding a conflict.  <u>See</u> Response at 9 (citing NMPRC Open Meeting Minutes, Nov. 8, 2017, Exhibit C at 9-16).

20.     Mr. Marks acted as counsel in Case No. 18-00268-UT, "which has led to the present enforcement action."  Response at 9 ("Great Divide NMPRC Case).

21.     The NMPRC did not object to Mr. Marks acting as counsel in that case.  <u>See</u> Response at 9.

---

(1) a former commissioner shall not be employed or retained in a position that requires appearances before the commission by a regulated entity, affiliated interest or intervenor within two years of his separation from the commission;

(2) a former employee shall not appear before the commission representing a party to an adjudication or a participant in a rulemaking within one year of ceasing to be an employee; and

(3) a former commissioner or employee shall not represent a party before the commission or a court in a matter that was pending before the commission while the commissioner or employee was associated with the commission and in which he was personally and substantially involved in the matter.

# PROCEDURAL BACKGROUND

Great Divide filed its Amended Complaint on May 30, 2019.  <u>See</u> Amended Complaint at 1.  In the Amended Complaint, Great Divide asks: (i) for a declaratory order stating that NMPRC, "through its Rule 570 and its interpretation of Rule 570, has adopted an implementation plan that violates" the Public Regulatory Policies Act of 1978, 16 U.S.C. § 824a-3 ("PURPA") and its Federal Energy Regulatory Commission's ("FERC") regulations; and (ii) for the Court to enjoin the Commissioners to lawfully implement federal law.  Amended Complaint at 1.  The Amended Complaint challenged the implementation of the plan's "unlawful" prerequisite that QFs need to be ready to interconnect before they can establish a legally enforceable obligation with a utility.  Amended Complaint at 2.

## 1.      The Commissioners' Motion.

The Commissioners filed the Motion on March 1, 2019.  <u>See</u> Motion at 1.  In its Motion, the Commissioners ask: (i) for the Court to disqualify Mr. Marks as Great Divide's counsel; and (ii) for the Court to stay the case until the Court decides whether to disqualify Mr. Marks to prevent irreparable harm.  <u>See</u> Motion at 1-2.  The Commissioners argue that Mr. Marks' representation of Great Divide, without the Commissioners' written consent, violates rule 16-111(A)(2) of New Mexico's Rules of Professional Conduct.  <u>See</u> Motion at 2.  Rule 16-111(A)(2) states that former government attorneys "'shall not otherwise represent a client in connection with a **matter in which the lawyer participated personally and substantially as a public officer or employee**'" without consent.  Motion at 4 (quoting NMRA Rule 16-111(A)(2)(emphasis in Motion)).  Great Divide further argues that federal cases support its proposition that disqualification is appropriate for former government attorneys and public officials who represent "clients in matters which the former government attorney/public official participated in personally and substantially to protect

the integrity of the federal court process and the legal profession." Motion at 6-9 (citing <u>Dexter Rogers v. Ind. Supreme Court, et al.</u>, 2017 WL 894477 (N.D. Ind. Mar. 7, 2017)(Collins, J.); <u>Heyliger v. Collins</u>, 2014 WL 910324 (N.D.N.Y. Mar. 10, 2014)(Peebles, J.); <u>Allied Realty of St. Paul v. Exchange Nat'l Bank of Chi.</u>, 283 F. Supp. 464 (D. Minn. 1968)(Neville, J.). The Commissioners use these three cases to support three arguments. First, the Commissioners argue that they are the "proper party to raise disqualification of Mr. Marks." Motion at 7 (citing <u>Dexter Rogers v. Ind. Supreme Court</u>, 2017 WL 894477, at *2). Second, the Commissioners argue that Mr. Marks should be disqualified regardless of whether his representation constitutes impropriety "to preserve the integrity of the process and to avoid appearance of impropriety." Motion at 7-8 (citing <u>Heyliger v. Collins</u>, 2014 WL 910324 at *2). Third, the Commissioners argue that the Court should grant the Motion to avoid "even the 'appearance of evil' even though there may not be actual use of previously gained knowledge or experience in the matter from the previous government service." Motion at 9 (quoting <u>Allied Realty of St. Paul v. Exchange Nat'l Bank of Chicago</u>, 283 F. Supp. at 468). The Commissioners next ask the Court to stay the proceedings. <u>See</u> Motion at 10. The Commissioners argue that a stay will not prejudice Great Divide because of the Motion's timeliness.

The Commissioners filed the Amended Motion so that they could attach one document composed of two parts. <u>See</u> Amended Motion at 1. The first part of the attached document is the Affidavit of Records Custodian Certifying Records Pursuant to Rule of Evidence 803(6), filed March 6, 2019 (Doc. 25-1). The second part of the attached document is the orders from NMPRC cases No. 06-00241-UT and 07-00422-UT, filed March 6, 2019 (Doc. 25-1).

### 2.    __Great Divide's Response.__

Great Divide responds.  <u>See</u> Response at 1.  Great Divide contends that the NMPRC rule at issue in this case is rule 17.9.570.9, which requires QFs to be ready to interconnect before they can establish a legally enforceable obligation with a utility.  <u>See</u> Response at 1.  Great Divide argues that, in contrast, the rules on which Mr. Marks worked were two rules "separate and distinct" from rule 570.9: rules 17.9.570.10 and 17.9.570.15.  Response at 2.  <u>See</u> Response at 7-8.  Great Divide next argues that rule 16-111 precludes government attorneys from representing clients in "matters" and that rulemaking is not considered a "matter," because "there are not parties involved and individual party rights are not at issue."  Response at 2.  <u>See id.</u> at 6-7.  Great Divide closes by contending that laches bar the Motion, because the NMPRC has "expressly and repeatedly permitted Marks to participate in matters turning on the application of various portions of Rule 570, including specifically Rule 17.9.570.09, the subject of this action."  Response at 8-10.

### 3.    __The Hearing.__

The Court held a hearing on April 9, 2019.  <u>See</u> Draft Transcript of Hearing at 1 (taken April 9, 2019)("Tr.").[3]  The Commissioners began by reiterating the argument from their Motion that they made in case the Court finds the matter to be an as-implemented claim.  <u>See</u> Tr. at 7:17-23 (Amer).  The Commissioners repeated their Motion's argument that, as an NMPRC Commissioner, Mr. Marks "participated substantially and personally" in rulemaking involving 570.9, even "approv[ing] the repeal and replace . . . of the entire rule, including 570.9, which is at issue here." Tr. at 8:23-9:5 (Amer).  The Commissioners next emphasized that disqualification is necessary,

---

[3]The Court's citations to the transcript of the April 9, 2019, hearing refer to the court reporter's original, unedited version; any final transcripts may contain slightly different page and/or line numbers.

not to stop Mr. Marks from using confidential information, but to avoid the appearance of impropriety so that the public trusts the judicial system.  See Tr. at 9:10-17(Amer)(saying "that the Commission does not believe that Mr. Marks is using confidential information").  The Commissioners next noted that, although the Commissioners waived this conflict in a previous case, they are not waiving the conflict in this case.  See Tr. at 21:5-26 (Amer).  The Commissioners explained that their change in membership may account for this difference.  See Tr. at 9:7-12 (Amer).

When the Court questioned whether the Commissioners "waived" the conflict, the Commissioners admitted that there was never a formal written waiver -- the Commissioners just did not approve one Commissioner's motion to disqualify.  See Tr. at 10:17-11:8 (Amer).  The Commissioners then attempted to distinguish the previous case's subject matter from the current case's subject matter.  See Tr. at 11:8-21 (Amer, Solimon).  The Commissioners repeated that "it is a very different" case, citing the differing parties and the differing rules that were challenged. Tr. at 11:9-21 (Amer, Solimon).  The Commissioners next explained to the Court that the laches argument did not apply, because the previous case "was filed as a formal complaint" and was not a "preemption challenge to the entire rule 570."  Tr. at 13:2-5 (Amer).  The Court posited a hypothetical to the Commissioners: should the Court preclude a former state legislator who voted on a law from challenging that law "because of his or her position in the legislature at the time?" Tr. at 13:8-13 (Court).  The Court voiced its concern that a blanket rule would discourage "good lawyers from going into state Government."  Tr. at 13:18-19 (Court).  The Commissioners responded that, in the Court's hypothetical, the lawyer would not be precluded from challenging the statute, because the lawyer does not meet the "personal and substantial participation criteria." Tr. at 14:3-12 (Amer).  The Commissioners clarified that their concern is that, in this case, Mr.

Marks is challenging the rule's validity itself -- his disqualification would be unnecessary if the rule was ancillary. See Tr. at 15:1-8 (Court, Amer).

Great Divide began its argument by rebutting the Commissioners' laches defense; it argued that Mr. Marks already has appeared before the NMPRC representing Great Divide in a challenge regarding the establishment of a legally enforceable obligation and that no Commissioner objected to his representation of Great Divide in that case. See Tr. at 16:22-17:1 (Guy). Great Divide next characterized disqualification as a "drastic remedy" that is rarely sought or granted, because disqualification requires "a deep overriding . . . ethical interest." Tr. at 17:4-16 (Guy). Great Divide underscored that Mr. Marks' tenure as Commissioner was from 2005 to 2012, and that, therefore, he was not involved in rule 570's 1988 promulgation, or in rule 570's 2016 and 2018 interpretations. See Tr. at 17:24-3 (Guy). Great Divide stated that the Court's ruling on whether the claim is an implementation challenge is important, because "we [can] only decide if Mr. Marks should continue in the case once we understand the case." Tr. at 18:12-19:6 (Guy). Noting the distinction between as-applied and as-implemented claims, Great Divide referred the Court to the Commissioners' discussion, which it conceded was "largely accurate." Tr. at 19:6-14 (Guy). After reviewing the legislative purpose behind PURPA and its FERC regulations, Great Divide emphasized that "all [it] care[s] about" is rule 570.9 -- a rule with which, the Commissioners concede, Mr. Marks was not involved. Tr. at 22:16-20 (Guy). Great Divide reiterated that the dispute centers around rule 570's interpretation, which happened after Mr. Marks' tenure as Commissioner. See Tr. at 23:6-15 (Guy). Rule 570's interpretation, argued Great Divide, is relevant, because Great Divide needs to demonstrate only that rule 570's interpretation conflicts with federal law to survive the Motion to Dismiss, filed March 1, 2019 (Doc. 19). See Tr. at 24:14-23 (Guy). Great Divide acknowledged that the Court would need to rule on other issues

before deciding the Motion because the arguments "are tied in together." Tr. at 25:2-5 (Guy). Great Divide told the Court that, in reading Great Divide's Amended Complaint, the Court would see that Great Divide's claim "is a very crisp federal law implementation challenge." Tr. at 25:8-9 (Guy).

Great Divide then began to discuss the "personally" and "substantially" requirements. Tr. at 25:16-18 (Guy). Great Divide noted that the Tenth Circuit has interpreted these words as meaning that "the factual context of the two representations [has] to be similar." Tr. at 25:18-22 (Guy). Mr. Marks, Great Divide argued, did not participate in the interpretations, and, thus, could not have "personally and substantially participate[d.]" Tr. at 26:5-10 (Guy). Great Divide dismissed the 2006 and 2007 rulemaking, because it did not involve rule 570.9, and argued that rulemaking was not a "matter" that would warrant disqualification. Tr. at 26:13-19 (Guy). The Court posed a hypothetical to Great Divide: if an attorney is substantially and personally involved in a rulemaking, would the Court be precluded from disqualifying the attorney in relevant cases because rulemaking is not a "matter?" Tr. at 26:20-25 (Court). Great Divide responded that, although it believes the hypothetical irrelevant, because Mr. Marks was not involved in the 2006 and 2007 rulemaking, it believed that the Court would have to ask: (i) who the parties were; (ii) did the attorney obtain information specific to an individual party during the attorney's tenure as a government official; and (iii) did the attorney, as a government official, adjudicate any individual party's rights. See Tr. at 27:2-11 (Guy). The Court noted that the rule used "matter" instead of "case" because of "matter's" breadth. Tr. at 27:24-28:7 (Court). Great Divide acknowledged that the Court may be reluctant to rule whether "matter" includes rulemaking, because of that ruling's implications, but it assured the Court that it did not have to reach that question in its decision. Tr. at 28:10-15 (Court). Great Divide argued that "it cannot be the case" that a government official's

involvement with a law bars the attorney "forever" from litigating cases involving the law. Tr. at 28:21-29:4 (Guy).

Turning back to the word "matter," Great Divide contended that the NMPRC's rules differentiate between "rulemaking" and "all other proceedings and matters." Tr. at 30:2-9 (Guy). Great Divide repeated that the Court need not determine whether "rulemaking" is a "matter" to decide the Motion. Tr. at 30 at 15-23 (Guy). Great Divide then returned to its laches argument, stating that laches is inapplicable, because the NMPRC did not disqualify Mr. Marks when he appeared before it in the Great Divide NMPRC Case. See Tr. at 31:6-17 (Guy)(insinuating that the Commissioners did not disqualify Mr. Marks in the Great Divide NMPRC Case, because they "knew he wasn't involved").

The Court allowed the Commissioners to reply. See Tr. at 32:1 (Court). The Commissioners first took issue with Great Divide's characterization of their claim, arguing that Great Divide's Complaint vacillates between an "as-implemented" and "as-applied" challenge. Tr. 32:6-13 (Amer). The Commissioners contended that, although Great Divide alleges that rule 570's interpretation is at issue, the statute's plain language is at issue, because it includes the ready-to-interconnect requirement. See Tr. at 33:10-16 (Amer). The Commissioners then cited "a Colorado rule" that defines "administrative proceedings" as including "matters," for support that the term "matter" includes "rulemaking." Tr. at 33:19-34:6 (Amer). The Commissioners noted that in the previous proceeding, Great Divide filed a complaint against one party and not for a declaratory order about rule 570's interpretation. See Tr. 34:14-35:3 (Amer). The Commissioners noted that they did not disqualify Mr. Marks because his complaint was dismissed without prejudice. See Tr. 39:24-40:12 (Amer). Turning to the ready-to-interconnect requirement, the Court inquired as to the Commissioners' justification for including that requirement. See Tr. at

35:7-19 (Court). The Commissioners replied that the FERC gives the States latitude to implement requirements. See Tr. at 47:8-11 (Amer)(analogizing the present case to W. Water Power Prod. Ltd., LLC v. Pub. Serv. Co. of N.M., No. 11-00466-UT (NMPRC Aug. 3, 2016)("WWPP"), and Power Res. Grp. Inc. v. Pub. Util. Comm'n of Tex., 422 F.3d 231 (5th Cir. 2005)("Power Resource Group")). The Commissioners added that they had a "duty to balance" different stakeholders' different interests, and that permitting unbuilt facilities to lock in rates contravenes the public's interest. Tr. at 36:12-23 (Amer). The Court wondered whether contractual safeguards, including provisions rendering a contract void, would be sufficient protection against unbuilt facilities never being built. See Tr. at 37:12-25 (Court). While the Commissioners searched their documents for their answer, the Court inquired whether the Commissioners agreed with the statement: "Mr. Marks was certainly on the commission, certainly involved in the interpretation of the rule, but wasn't there when the rule itself was promulgated." Tr. at 38:4-12 (Amer, Court). The Commissioners disagreed with the Court's characterization, arguing that the 2006 and 2007 repeal-and-replacement affected the entire rule, and, further, that if Mr. Marks was involved in any section then he was a participant, because the rule's sections must be read in conjunction with each other. See Tr. at 38:13-18 (Amer).

The Court posed a hypothetical to the Commissioners: "Let's say I returned to private practice, but I had interpreted ten times in my [judicial] career some particular rule but I wasn't involved in promulgating it or anything like that." Tr. 38: 22-38:25 (Court). The Court concluded that, in its hypothetical, it would not characterize itself as "substantially involved" in the rule. Tr. at 39:1-3 (Court). The Court stated that its hypothetical is an extrapolation of the Commissioners' reasoning. See Tr. at 39:4-6 (Court). The Commissioners explained that, in this situation, all of the rules, including the ones in which Mr. Marks had been involved, were readopted in 2006 and

2007.  See Tr. at 39:14-17 (Amer).  Answering the Court's inquiry, the Commissioners stated that rule 570's language was not altered in the repeal-and-replace.  See Tr. at 40:15-20 (Court, Amer).  The Commissioners explained that language might not be altered in a repeal-and-replace, because repeal-and-replaces occur whenever a sufficient number of amendments are made.  See Tr. at 41:9-15 (Amer).  The Court asked whether, during the repeal-and-replace process, Mr. Marks and the Commissioners would have looked at all the rules or only the controversial rules, and the Commissioners admitted that, although they could not confirm what was discussed, it does not appear that rule 570.9 was discussed.  See Tr. at 41:16-42:7 (Court, Amer).

Pressing the Commissioners further, the Court posed another hypothetical: if the Court was reviewing a set of revised local rules, and only some rules had redlines, should another court disqualify lawyers and judges working on the rule without redlines when the amended set of local rules was published?  See Tr. at 42:13-22 (Court).  The Commissioners replied that, because the obligation to purchase is a key part of rule 570, they would have expected Mr. Marks, an attorney, to review it and raise issue with it regardless.  See Tr. at 43:1-6 (Amer).  The Court considered whether time management could explain why Mr. Marks did not challenge that obligation to purchase.  See Tr. at 43:7-15 (Court).   The Court wondered if "the rule gives us a little bit of an out," because "personally and substantially involved" may require more than "the silence of the record."  Tr. at 43:15-44-1 (Court).  The Commissioners responded by saying that the "obligation to purchase" is the "heart rule," so "how can you reenact [the] heart of the rule [that] violates [the] purpose [and] FERC?"  Tr. at 44:2-7 (Amer).

The Court then wrapped up the Motion.  See Tr. at 44:11-12 (Court).  The Court stated that, although it was not denying the motion, it was "a little less inclined to grant the motion."  Tr. at 44:13-15 (Court).  The Court explained that it believes that it could "craft a definition of 'matter'

and focus on those words of 'substantially' and 'personally'" to conclude that Mr. Marks is not disqualified. Tr. at 44:16-19 (Court)(internal quotation marks added). The Court indicated that it was "not inclined to grant" the motion. Tr. at 44:25 (Court).

The Court next addressed the motion to stay. See Tr. at 45:9-10 (Court). The Court stated that the Supreme Court of New Mexico's caselaw regarding stays is procedural, and, thus, does not bind the Court. See Tr. at 45:10-13 (Court). The Court told the parties it would provide an opinion on this Motion. See Tr. at 45:14-16 (Court). This opinion is that promised opinion.

Before the hearing finished, Great Divide interjected to argue that Mr. Marks did not have the opportunity to say that rule 570 violates federal law because the Commissioners are unable to look at the Notice of Proposed Rulemaking. See Tr. at 46:1-23 (Guy). The Commissioners argued the first point by noting that, although the issue was first presented in 2016, the case was filed and litigated in 2011, when Mr. Marks was a Commissioner. See Tr. at 47:3-6 (Amer). Great Divide countered that the legally-enforceable-obligation issue did not arise until the end of the case in 2016. See Tr. at 47:18-21 (Guy). The Commissioners argued that the complaint filed in 2011 "specifically says that they're requesting that PNM shall immediately offer to purchase at a rate" and that "PNM was in [violation] of its obligation under rule 570." See Tr. at 48:10-16 (Amer). The Court ended the hearing by giving the parties permission to supplement the record. See Tr. at 49:5-7 (Court).

4.          **Motion to Dismiss and Hearing**.

For context, the Court excerpts procedural history from its Memorandum Order and Opinion, 2019 WL 2144829 No. CIV 19-0099 JB\CG (May 16, 2019)(Doc. 55)("MOO"):

> The Commission asks that the Court dismiss the Complaint for lack of subject-matter jurisdiction. See MTD at 1-2. According to the Commission, PURPA delineates two challenges to state regulatory actions: (i) as-applied

challenges that "involve[] a contention that the agency's implementation plan is unlawful as it applies to or affects an individual petitioner"; and (ii) as-implemented challenges that "allege[] that the state agency has failed to comply with its obligation under Section 210(f)(2) of PURPA to devise a plan that implements PURPA and FERC's PURPA-related regulations."  MTD at 4 (citing 16 U.S.C. § 824a-3(g)-(h); Power Res. Grp. v. Pub. Util. Comm'n of Tex, 422 F.3d 231, 233, 235 (5th Cir. 2005); Mass. Inst. of Tech. v. Mass Dep't of Pub. Utils, 941 F. Supp. 233, 237 (D. Mass. 1996)(Lindsay, J.); Greensboro Lumber Co. v. Ga. Power Co., 643 F. Supp. 1345, 1374 (N.D. Ga. 1986)(Moye, J.)).  The Commission explains that federal courts have jurisdiction over only as-implemented claims.  See MTD at 4-5.

The Commission argues that Great Divide brings an as-applied challenge.  See MTD at 5.  The Commission contends that Great Divide's requested relief would benefit only Great Divide and affect only Great Divide's relationship with El Paso Electric.  See MTD at 5.  The Commission contends that, in the Complaint, Great Divide admits that the NMPRC implements PURPA and the related FERC regulations through rule 570, and does not challenge rule 570's legality, but argues that rule 570 does not address legally enforceable obligations.  See MTD at 17-18.  According to the Commission, rule 570 prescribes the date on which an energy utility's legally enforceable obligation arises.  See MTD at 18.

The Commission cites two cases to support its arguments.  See MTD at 19-20.  According to the Commission, in Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d 380 (5th Cir. 2014), the United States Court of Appeals for the Fifth Circuit concluded that a qualified facility raised an as-applied challenge where the qualified facility's claims rested largely on the order that the Public Utility Commission of Texas ("PUCT") issued rather than on a rule that the PUCT promulgated.  See MTD at 19 (citing Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 390).  The Commission states that, in Exelon Wind 1, L.L.C. v. Nelson, the Fifth Circuit also rested its conclusions on the qualified facility's requested relief -- that the federal court require that the PUCT reopen the considerations in its particular case and not enforce the prior order against it.  See MTD at 19 (citing Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d at 390).  The Commission also cites Power Resource Group v. Klein, No. A-03-CA-762-H, 2004 U.S. Dist. Lexis 28820 (W.D. Tex. Feb. 18, 2004)(Hudspeth, J.), in which the qualifying facility asked the federal court to declare that the PUCT's actions affecting the qualifying facility violated PURPA.  See MTD at 19-20 (citing Power Res. Grp. v. Klein, 2004 U.S. Dist. Lexis 28820, at *23).  According to the Commission, the qualifying facility "requested injunctive relief requiring the PUCT to promulgate new regulations and to reconsider the qualifying facility's petition under those new regulations."  MTD at 20 (citing Power Res. Grp. v. Klein, 2004 U.S. Dist. Lexis 28820, at *23).  The Commission describes that the Honorable Harry Lee Hudspeth, then-Senior United States District Judge for the Western District of Texas, held that the qualifying facility

brought an as-applied claim.  See MTD at 20 (citing Power Res. Grp. v. Klein, 2004 U.S. Dist. Lexis 28820, at *23).

The Commission also avers that courts have concluded that 28 U.S.C. § 1331 does not grant subject-matter jurisdiction where a more specific statute elsewhere grants subject-matter jurisdiction.  See MTD at 20.  The Commission states that PURPA provides exclusive subject-matter jurisdiction to state courts over as-applied challenges, so the Court lacks subject-matter jurisdiction here.  See MTD at 20-21.  The Commission likewise argues that the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, does not provide an independent jurisdictional basis for federal cases, so Great Divide cannot rely on the Declaratory Judgment Act for subject-matter jurisdiction.  See MTD at 21.

The Commission opined that Great Divide challenges the N.M. Order in an as-applied challenge and not rule 570 in an as-implemented challenge, because Great Divide does not want the NMPRC to have to engage in a rulemaking to change rule 570.  See Draft Transcript of Hearing at 47:15-21 (taken May 2, 2019)(Amer)("[May 2] Tr.").  The Commission expressed its belief that Great Divide worries that a rulemaking will prevent the Projects' construction on a timeline that will allow Great Divide to earn tax credits for renewable energy projects.  See [May 2] Tr. at 47:21-24 (Amer); id. at 48:18-49:9 (Amer).  The Commission explained that a rulemaking takes about eighteen months to complete. See [May 2] Tr. at 51:19-23 (Amer).  The Court asked Great Divide to discuss these tax credits.  See Tr. at 84:21-85:2 (Court).  Great Divide explained that it will receive tax credits if it completes construction on the Projects before 2020.  See [May 2] Tr. at 85:6-11 (Guy).  The Court pressed Great Divide on how the timing of the Projects' construction affects the tax credits.  See [May 2] Tr. at 86:16-22 (Court).  Great Divide identified the tax credit as a production tax credit that provides a credit for every kilowatt-hour of renewable energy that the Projects produce.  See [May 2] Tr. at 90:20-25 (Marks).  According to Great Divide, the tax credit is applied over the Projects' first ten years of production.  See [May 2] Tr. at 91:3-7 (Marks).  Great Divide described that, if construction begins by a certain deadline, the developer receives a certain amount of tax credits, but if the construction is delayed, the developer receives a "proportional reduction" in the tax credits.  [May 2] Tr. at 87:4 (Guy).  See id. at 86:23-87:5 (Guy).  According to Great Divide, it is deemed for tax purposes to have begun work on the Projects in 2016 and, therefore, must complete the Projects by 2020 to receive the one hundred percent credit.[4]  See [May 2] Tr. at 93:21-94:8 (Rucker).

---

[4]The Library of Congress' Congressional Research Service has succinctly explained these tax credits.  See Cong. Research Serv., The Renewable Electricity Production Tax Credit: In Brief (Nov. 27, 2018), https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source= web&cd=3&cad=rja&uact=8&ved=2ahUKEwju76CXyILiAhWUvJ4KHfO1BTAQFjACegQIA

The Commission reiterated the background on PURPA and the FERC regulations and the Commission' arguments from the MTD and the Reply. See [May 2] Tr. at 52:20-56:19 (Moss); id. at 57:11-59:8 (Moss); id. at 59:12-7 (Moss). The Commission added that it could not have waived its jurisdictional arguments during the FERC enforcement action and repeats its Reply's other arguments about that enforcement action. See [May 2] Tr. at 61:17-62:11 (Moss). Great Divide replied and mentioned that parties can raise an as-applied/as-implemented challenge in FERC proceedings but admitted that the issue is not central to this case. See [May 2] Tr. at 62:22-63:6 (Guy). Great Divide then repeated its arguments from the Response. See [May 2] Tr. at 63:8-64:1 (Guy); id. at 65:24-67:2 (Guy). Great Divide added to its arguments that the Commission does not want anyone to challenge rule 570 and that rule 570 defeats PURPA's purpose of encouraging development by requiring that developers build qualifying facilities before obtaining guarantees of purchasers for their electric energy. See [May 2] Tr. at 64:25-65:23 (Guy).

---

RAC&url=https%3A%2F%2Ffas.org%2Fsgp%2Fcrs%2Fmisc%2FR43453.pdf&usg=AOvVaw0 CBXyvST-jNvn-aZVA6dCz ("CRS Report"). Congress enacted the Production Tax Credit for wind facilities in the Consolidated Appropriations Act, Pub. L. 114-113 (2016). See CRS Report at 1. The Production Tax Credit is calculated by the kilowatt-hour of energy that a facility generates. See CRS Report at 1. A facility may claim the credit once it begins production and for the first ten years after it begins production. See CRS Report at 1. The credit amount adjusts each year according to inflation. See CRS Report at 1. The maximum tax credit for 2017 and 2018 [was] 2.4 cents per kilowatt-hour. See CRS Report at 1. For 2016, the maximum credit amount was 2.3 cents per kilowatt-hour. See CRS Report at 1. The Production Tax Credit for wind facilities began phasing out in 2017, but wind facilities for which construction begins before 2020 will qualify for the credit. See CRS Report at 1. Wind facilities that began construction in 2017 will receive eighty percent of the tax credit; facilities that began construction in 2018 will receive sixty percent of the tax credit; and facilities that begin construction in 2019 will receive forty percent of the [tax] credit. See CRS Report at 1.

The Internal Revenue Service ("IRS") provides a safe harbor for wind facilities that begins construction in 2016 and complete construction "no more than four calendar years after" the year construction began. Comm'r, Beginning of Construction for Sections 45 and 48, Notice 2016-31 ¶ 3, at 5, https://www.irs.gov/pub/irs-drop/n-16-31.pdf. See Comm'r, Beginning of Construction for Purposes of the Renewable Electricity Production Tax Credit and Energy Investment Tax Credit, Notice 2013-29 § 1, at 1 ("Notice 2013-29"), https://www.google.com/search?q=Notice+2013-29+%28Five+Percent+Safe+Harbor%29+ irs&ie=utf-8&oe=utf-8&client=firefox-b-1-ab (establishing the safe harbor for facilities on which construction begins before January 1, 2014). Under the safe harbor, the IRS deems construction to have begun on a wind facility when a developer begins physical work on the project, or when a developer pays five percent or more of the cost of the facility, and makes "continuous efforts to advance toward completion of the facility," pursuant to the IRS' regulations. Notice 2013-29 §§ 4, 5, at 2, 9 (describing the safe harbors). Accordingly, a wind facility that begins construction in 2016 and finishes construction in 2020 receives the full Production Tax Credit.

The Court asked whether a complaint could raise as-applied and as-implemented challenges, see [May 2] Tr. at 64:2-6 (Court), and Great Divide confirmed that such a scenario was possible but argued that it raises only an as-implemented challenge, see [May 2] Tr. at 64:7-13 (Guy). Great Divide admitted that rule 570 on its face is not unlawful, see [May 2] Tr. at 80:15-22 (Guy), and averred that Great Divide challenges the NMPRC's interpretation of rule 570, see [May 2] Tr. at 67:3-14 (Guy). Great Divide summarized that it challenges the N.M. Order, because the N.M. Order contains the unlawful interpretation that the NMPRC applied to Great Divide. See [May 2] Tr. at 72:18-20 (Guy). Great Divide explained that rule 570 does not mention a "legally enforceable obligation" and that the NMPRC in the Western Water and Power case interpreted rule 570 for the first time as establishing when a legally enforceable obligation arises. See [May 2] Tr. at 70:2-18 (Guy). Great Divide emphasized that the NMPRC has proposed a rulemaking to define "legally enforceable obligation," but has not undertaken the rulemaking. See [May 2] Tr. at 70:18-21 (Guy). According to Great Divide, in the Complaint, it comments that rule 570 does not include the words "legally enforceable obligation" and that the NMPRC relied on the Western Water and Power case to decide its case, and requests that the Court declare that the N.M. Order is unlawful. See [May 2] Tr. at 78:23-79:8 (Guy). In Great Divide's view, the Commission's position would grant immunity from challenge to state agencies' interpretations of the state regulations implementing PURPA. See [May 2] Tr. at 81:4-19 (Guy).

The Commission replied and argued that Great Divide reads incorrectly rule 570, because the rule establishes on its face when a legally enforceable obligation arises. See [May 2] Tr. at 96:14-97:10 (Moss). The Commission added that, in the N.M. Order, the NMPRC states that it rests its conclusion on rule 570's plain meaning. See [May 2] Tr. at 97:11-24 (Moss). The Commission further responded that Great Divide could have challenged rule 570 in the Complaint but chose not to directly challenge the rule. See [May 2] Tr. at 97:24-98:14 (Moss).

The Court asked in what timeframe Great Divide envisioned needing a decision from the Court. See [May 2] Tr. at 87:23-88:7 (Court). Great Divide replied that, ideally, it would like a response to the MTD in a week or two, and that it envisions filing motions for summary judgment within a couple months. See [May 2] Tr. at 89:15-90:6 (Guy). Great Divide explained that it estimates needing about fourteen months to build the projects. See [May 2] Tr. at 91:21-25 (Marks). Great Divide described that the Projects' capital costs are around $224 million and that it will need to finance the Projects by around October, 2019, to meet its goal for the tax credit. See [May 2] Tr. at 92:20-93:4 (Rucker).[5] Great Divide explained

---

[5]Rucker is the Plaintiffs' CEO. See [May 2] Tr. at 92:15-17 (Guy).

that it would struggle to complete the project if it receives even only eighty percent of the tax credits.  See [May 2] Tr. at 93:4-15 (Rucker).

 The Commission opined that, no matter what the Court does in this case, Great Divide waited too long to resolve the case, and the parties will not resolve the case's merits in the time required for Great Divide to begin construction, because Great Divide also wants to establish an avoided cost rate for El Paso Electric.  See [May 2] Tr. at 100:2-15 (Moss).  The Court asked the Commission what it meant by stating that Great Divide waited too long, and the Commission explained that Great Divide knew of the Western Water and Power case in 2016 and was planning the Projects in 2016, but waited until 2018 to bring this case.  See [May 2] Tr. at 100:16-101:6 (Court, Moss).  Great Divide responded that developing the Projects required several years of study and that it worked with El Paso Electric before filing the complaint with the NMPRC, so it did not delay in filing its complaint with the NMPRC.  See [May 2] Tr. at 111:10-20 (Guy).  The Court promised the parties an opinion on the MTD, and stated that it would address the MTD before it addresses the Defendants' Motion to Disqualify and Motion to Stay Mr. Jason Marks, Esq. and Memorandum of Law in Support Thereof, filed March 1, 2019 (Doc. 18), or Proposed Intervenor's El Paso Electric Company's Motion to Intervene as a Defendant Pursuant to Fed. R. Civ. P. 24, filed March 1, 2019 (Doc. 24).  See Tr. at 115:1-116:2 (Court).

MOO at 10-22.

5. **The MOO.**

 The Court issued its MOO, concluding that Great Divide raised only as-applied challenges and that the Court would have jurisdiction if Great Divide amended the Complaint to raise as-implemented challenges.  See MOO at 41, 47.  The Court first discussed how it concluded that the challenges were as-applied.  See MOO at 41.  The Court stated that Great Divide's complaints were focused on "the N.M. Order's application of rule 570 and NMPRC caselaw to it."  MOO at 43.  The Court provides specific examples: (i) in the prayer for relief, Great Divide requested relief "remedying the N.M. Order's specific effects on them," MOO at 42; and (ii) Great Divide requested an injunction to "'resolve disputes between Plaintiffs and EPE,'" MOO at 42 (quoting Complaint ¶ b, at 13).  The Court noted that, at the hearing, Great Divide conceded that rule 570 did not violate PURPA and the FERC regulations and admitted that the Complaint did not make

that claim. <u>See</u> MOO at 43. The Court additionally noted that Great Divide alleged only at the hearing that NMPRC's interpretation of rule 570 was the regulatory action that violated PURPA and its FERC regulations. <u>See</u> MOO at 43. Great Divide's claim about methodology did not challenge rule 570 or the NMPRC's interpretation of it.

The Court noted that, instead of these as-applied challenges, Great Divide could have raised an as-implemented challenge that rule 570, or NMPRC's interpretation of rule 570, violated PURPA and its FERC regulations. The Court said that Great Divide could have asked for relief declaring rule 570 or the NMPRC's interpretation of rule 570 invalid. The Court suggested that Great Divide "might have asked for "an order '[d]eclaring that the NM Order violates PURPA and FERC regulations insofar as it' interprets rule 570." MOO at 45 (quoting Complaint ¶ a, at 13). The Court noted that, had Great Divide brought an as-implemented challenge, the Court would have had jurisdiction over the case. <u>See</u> MOO at 50. The Court, accordingly, dismissed the case without prejudice. <u>See</u> MOO at 50.

## LAW REGARDING DISQUALIFICATION

Two sources of authority govern motions to disqualify:

> First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law. <u>In re American Airlines, Inc.</u>, 972 F.2d 605, 610 (5th Cir. 1992), <u>cert. denied sub nom. Northwest Airlines, Inc. v. American Airlines</u>, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). Therefore, motions to disqualify are governed by the ethical rules announced by the national profession and considered in "light of the public interest and the litigants' rights." <u>See</u> <u>[In re] Dresser [Industries, Inc.]</u>, 972 F.2d [540,] 543 [(5th Cir. 1992)].

<u>Cole v. Ruidoso Mun. Schs.</u>, 43 F.3d 1373, 1383 (10th Cir. 1994). The local rules for the United States District Court for the District of New Mexico state: "The Rules of Professional

Conduct adopted by the Supreme Court of the State of New Mexico apply except as otherwise provided by local rule or by Court Order." D.N.M. L.R. 83.9. "The New Mexico Rules were patterned after the [American Bar Association's] Model Rules of Professional Conduct -- the rules which . . . reflect the national standard to be used in ruling on disqualification motions," <u>Cole v. Ruidoso Mun. Schs.</u>, 43 F.3d at 1383, and the New Mexico Rule at issue does not differ from their counterparts in the ABA's Model Rules, <u>compare</u> Rule 16-111(A)(2) NMRA <u>with</u> ABA Model Rule 1.11(a)(2).

Rule 16-111(A)(2) NMRA states:

A. **Subsequent Representation.** Except as law may otherwise expressly permit, a lawyer who has formerly served as a public officer or employee of the government:

. . .

(2) shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.

NMRA Rule 16-111(A)(2)(bold in original). The New Mexico Rules define "matter" as:

(1) any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties; and

(2) any other matter covered by the conflict of interest rules of the appropriate government agency.

Rule 16-111(E)(1)-(2) NMRA. New Mexico Rules elaborate on "matter" by stating that "[t]he scope of '[the] matter' for purposes of this rule depends on the facts of a particular situation or transaction." NMRA Rule 16-109 cmt. 1. "Taken together, Rules 16-109 and 16-111 indicate a fact-specific, transactional approach to determining the scope of '[the] matter.'" <u>Roy D. Mercer,</u>

LLC v. Reynolds, 2013-NMSC-002, ¶ 26, 292 P.3d 466, 472 (quoting rule 16-109 and rule 16-111).

Rule 16-111's commentary explains that rule 16-111 is "a balancing of interests" between: (i) ensuring that a lawyer is "not in a position where benefit to the other client might affect performance of the lawyer's professional functions on behalf of the government" and ensuring that "unfair advantage [does] not accrue to other client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service"; and (ii) ensuring that the rules are not "so restrictive as to inhibit transfer of employment to and from the government," because the "government has a legitimate need to attract qualified lawyers as well as maintain high ethical standards." NMRA Rule 16-111 cmt. 4. Rule 16-111(A)(2) limits disqualification to "matters involving a specific party or parties, rather than extending disqualification to all substantive issues on which the lawyer worked" to "prevent the disqualification rule from imposing too severe a deterrent against entering public service." NMRA Rule 16-111 cmt. 4.

## **LAW REGARDING STAYS**

A court has broad discretion in managing its docket, which includes decisions regarding issuing stays for all or part of a proceeding. See Clinton v. Jones, 520 U.S. 681, 706 (1997)("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936))).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. at 254-55. Recognizing that district courts must exercise moderation in issuing stays, the Supreme Court of the United States of America has noted that there are no strict rules for the district court to apply, because "[s]uch a formula . . . is too mechanical and narrow." Landis v. N. Am. Co., 299 U.S. at 255.

The party seeking a stay generally faces a difficult burden. See Clinton v. Jones, 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need."); S2 Automation LLC v. Micron Tech., Inc., No. CIV 11-0884 JB/WDS, 2012 WL 3150412, at *2 (D.N.M. July 23, 2012)(Browning, J.)(citing Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir. 1983)). "In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484. "The underlying principle clearly is that 'the right to proceed in court should not be denied except under the most extreme circumstances.'" Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (alterations omitted)(quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

## LAW REGARDING LACHES

Laches "bars a party's dilatory claim . . . when there is: '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" Biodiversity Conservation All. v. Jiron, 762 F.3d 1036, 1090-91 (10th Cir. 2014)(quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)). See Pueblo of Jemez v. United States, No. CIV 12-0800 JB\JHR, 2019 WL 1128359, at *3 (D.N.M. Mar. 12, 2019)(Browning, J.). Laches, which is rooted in the principle that "equity aids the vigilant and not those who slumber on their rights," Kansas v. Colorado, 514 U.S. 673, 687 (1995), demands flexible application,

Biodiversity Conservation All. v. Jiron, 762 F.3d 1036, 1091 (10th Cir. 2014)("'Equity eschews mechanical rules; it depends on flexibility. Equity as acted on the principle that laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced . . . .'")(quoting Holmberg v. Armcrecht, 327 U.S. 392, 396 (1946)).

## ANALYSIS

The Commissioners request that the Court disqualify Mr. Marks as counsel and stay the proceedings until the Court resolves the disqualification issue. See Motion at 1-2. Great Divide objects that Mr. Marks' tenure as NMPRC Commissioner and Chairman does not merit disqualification under rule 16-111(A)(2), and that the motion to stay will become moot when the Court denies the Motion as Great Divide believes it should do. See Response at 2, 10. The Court concludes that Mr. Marks' involvement with rule 570 as NMPRC Commissioner and Chairman does not merit disqualification, because the rulemaking proceedings are not "matters" under rule 16-111(A)(2), and because he was not "personally" and "substantially" involved. NMRA Rule 16-111(A)(2). Because the District of New Mexico and the United States Court of Appeals for the Tenth Circuit have not fleshed out this area of law yet, the Court fashions its definitions of "matter," "personally," and "substantially" following the text of rule 16-111(A)(2), and relying on persuasive law from other federal courts.

I.     **THE COMMISSIONERS DID NOT UNREASONABLY DELAY IN FILING THEIR MOTION TO DISQUALIFY, AND GREAT DIVIDE IS NOT PREJUDICED BY THE TIME AT WHICH THE COMMISSIONERS FILED THEIR MOTION TO DISQUALIFY.**

While the Court has flexibility in applying the doctrine of laches, the Court must find that (i) the motion to disqualify was unreasonably delayed; and (ii) this unreasonable delay prejudiced Great Divide. See Biodiversity Conservation All. v. Jiron, 762 F.3d 1036, 1091 (10th Cir. 2014).

The Court concludes that the Commissioners did not unreasonably delay their motion to disqualify. The laches defense, therefore, is not a bar to the motion to disqualify counsel.

The Commissioners did not unreasonably delay filing their motion to disqualify. Great Divide asserts that the Commissioners unreasonably delayed their motion to disqualify, because the Commissioners could have disqualified Mr. Marks before three different times: (i) in a 2015 case involving rule 570.7, rule 570.10, and rule 570.14; (ii) in a 2017 case "again [involving] rooftop solar surcharges"; and (iii) in the 2018 case that led to the current case. Response at 9. Great Divide emphasizes that the Commissioners considered disqualification in the 2017 case, but that the Commissioners, in a three-to-two vote, elected not to find a conflict. <u>See</u> Response at 9. The Commissioners' lack of action in these three cases, Great Divide argues, demonstrates that bringing a motion to disqualify now is unreasonable. The Court disagrees with Great Divide. The NMPRC was not composed of the same five Commissioners against whom this case was brought.[6] Just because a different NMPRC iteration decided against disqualifying Mr. Marks does not mean that these NMPRC Commissioners would make the same decision. The Court, views this case, not the 2015 case, as the first opportunity all five of these Commissioners had together to disqualify Mr. Marks. The Court concludes that less than a month between filing the complaint and filing a motion to disqualify is a reasonable timeframe. <u>Compare</u> Complaint for Declaratory and Injunctive Relief against All Defendants, filed February 6, 2019 (Doc. 1)("Complaint"), <u>with</u> Motion to Disqualify Counsel, filed March 1, 2019 (Doc. 18).

---

[6]Neither party discussed the NMPRC's composition in the prior three cases, so the Court has done its own research to verify that the composition changed. <u>See</u> Commissioners, NMPRC, available at http://nmprc.state.nm.us/commissioners/index.html (last visited Nov. 20, 2019).

Furthermore, the motion to disqualify does not cause undue prejudice to Great Divide. The Tenth Circuit has found prejudice for unreasonable delay when prejudice was "undue," "substantial," or "material": "Further, courts have said that prejudice is established when the defendant has expended substantial time and effort during the delay that the defendant's claim could defeat." Biodiversity Conservation All. v. Jiron, 762 F.3d at 1091 (quoting Daingerfield Island Protective Soc. v. Lujan, 920 F.2d 32, 37 (D.C. Cir. 1990)("undue"); Yates v. Am. Republics Corp., 163 F.2d 178, 180 (10th Cir. 1947)("substantial"); Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997)("material")(citing Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1338-39 (10th Cir. 1982))). Rather than presenting evidence of undue, substantial, or material prejudice, Great Divide offers no evidence of prejudice that the Commissioners' "delay" has caused them to suffer. See generally Response. Great Divide contends only that Mr. Marks' disqualification would cause it prejudice in the future, because disqualification would mean Great Divide would have to hire a new attorney "after Mr. Marks has become intimately familiar with the matters in the case before the NMPRC, their Petition to FERC, and the instant case." Response at 10. While Mr. Marks was part of the original action, the Court already has stated that it calculates the delay from the date the Complaint was filed. Great Divide, therefore, would have to substitute counsel less than one month after proceedings have commenced. The Court does not find that substituting counsel less than one month after filing is the undue, substantial, or material prejudice that laches is meant to cure.[7] The Court, therefore, concludes that laches is inapplicable

---

[7]The Court already has decided in this opinion that Mr. Marks' involvement in previous rulemaking proceedings does not render him disqualified. In an alternate universe in which the Court disqualifies Mr. Marks under rule 16-111, Mr. Marks' "intimate" involvement with the previous rulemakings would serve only as a further justification for disqualifying him and not as evidence of the prejudice Great Divide would suffer. Response at 10.

in the present case and that equity does not bar the Commissioners from bringing their motion to disqualify

## II.     NEW MEXICO STATE LAW ON STAYS DOES NOT BIND THE COURT, AND THE COURT, THEREFORE, USES ITS DISCRETION TO DENY THE STAY.

The Commissioners err in citing the New Mexico state case, Living Cross Ambulance Service v. NMPRC, 2014-NMSC-036, 338 P.3d 1258, for the proposition that the Court must stay the case pending the resolution of the Motion. See Motion at 10 ("[Once] a party moves to disqualify an adverse party's counsel based on counsel's former representation of the movant, all substantive proceedings must cease until the tribunal determines whether counsel is disqualified.")(quoting Living Cross Ambulance Service v. NMPRC, 2014-NMSC-036, 338 P.3d at 1262. Federal law, not state law, governs the substance and procedure of federal claims that arise under federal-question jurisdiction in federal court. See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., No. 18-CV-00064-TCK-FHM, 2018 WL 4038117, at *5 (N.D. Okla. Aug. 23, 2018)(Kern, J.)("Federal law governs both substance and procedure in the litigation of federal claims in federal court."); Aerosonic Corp. v. Trodyne Corp., 402 F.2d 223, 229 (5th Cir. 1968)("It is not to be doubted that where the jurisdiction of the federal court is based on the existence of a federal question, federal law applies as to both substance and procedure."). This case arises under federal-question jurisdiction. See Amended Complaint ¶¶ 17-18, at 3-4 ("The Court has subject matter jurisdiction . . . because the action brings claims arising under federal law. The Court also has subject matter jurisdiction over this action pursuant to 16 U.S.C. § 824(a-3(h)(2)(B))."). Federal law, therefore, governs this case both substantively and procedurally. The Court, thus, looks to federal law when deciding the motion to stay.

The Court's use of federal law is appropriate even though it is deciding a motion on the Supreme Court of New Mexico's Rules of Professional Conduct. Federal courts have the "inherent power" to regulate the conduct of attorneys who appear in their court.[8] Chambers v. NASCO, Inc., 501 U.S. 32, 51 (1991). See Judith A. McMorrow, The (f)utility of Rules: Regulating Attorney Conduct in Federal Court Practice, 58 SMU L. Rev. 3, 19 (2005)(describing Chambers v. NASCO, Inc. as the "exclamation point for the idea that the federal court is in control" of "the proceedings in their courtroom, including [] power to regulate attorneys"); N.M. R. Prof'l. Conduct 16-805 (acknowledging the "authority [of] federal tribunal [] to regulate practice before them"). The District of New Mexico used its power to incorporate into its local rules the New Mexico Rules of Professional Conduct. See D.N.M.L.R 83.9; Fed. R. of Civ. P. 83 (giving a district court that follows the prescribed notice and comment procedure the power to promulgate local "rules governing its practice" ). The District of New Mexico is not obligated, however, to incorporate the New Mexico Rules of Professional Conduct into its local rules. See Eli J. Richardson, Demystifying the Federal Law of Attorney Ethics, 29 Ga. L. Rev. 137, 150 (1994)("Federal courts need not use the attorney-ethics rules of the jurisdiction in which they sit."). The District of New Mexico could have adopted the ABA Model Rules or opted out of adopting any code and promulgated ethics rules via adjudication. See Rand v. Monsanto Co., 926 F.2d 596, 603 (7th Cir. 1991)(Easterbrook, J.)(noting that 18.18% of federal district courts had not adopted a set of

---

[8]Federal courts can not regulate the conduct of the attorneys who appear in their court if their regulation conflicts with a federal law. Federal prosecutor are subject to the McDade Amendment, a provision in the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, which "requires federal prosecutors to comply with state ethics guidelines without regard for other federal interests at stake. Federal Prosecutors, State Ethics Regulations, and the McDade Amendment, 113 Harv. L. Rev. 2080, 2089 (2000).

attorney-ethics rules).  Because the District of New Mexico has elected to incorporate the New Mexico Rules of Professional Conduct, those rules became part of the federal law, just as adopting a case-by-case adjudication method or adopting its own version of the ABA Model rules would have resulted in federal law.  See, e.g., Richardson, supra, at 150 ("Ethical standards applicable in federal court are a matter of federal law.").  Although the District incorporated state law, the law in federal court is federal law.  See Hollingsworth v. Perry, 558 U.S. 183, 191 (2010)(stating that local rules have the force of law); Polycast Tech. Corp. v. Uniroyal, Inc., 129 F.R.D. 621, 624 (S.D.N.Y. 1990)("Federal law governs the conduct of attorneys in the federal courts.  Generally, that law is embodied in the local rules of each court."); Kitchen v. Aristech Chem., 769 F. Supp. 254, 258 (S.D. Ohio 1991)(stating that "questions of ethics in federal cases are ultimately questions of federal law").  Moreover, it is a well-established principle that federal law governs substantive federal claims, such as a motion to disqualify in federal court.  See, e.g., Cole v. Ruidoso Mun. Schs., 43 F.3d at 1383 ("Because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards under federal law.").

Furthermore, incorporating the Supreme Court of New Mexico's adoption of rules does not incorporate the Supreme Court of New Mexico's interpretation of those rules.  Although the Court has adopted New Mexico's Rules of Professional Conduct, it has reserved the power to override these rules.  Compare D.N.M. L.R. 83.9 ("The Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico apply except as otherwise provided by local rule or by Court order."), with, e.g., D.Ariz. L.R. 83.2 (adopting the Supreme Court of Arizona's Rules of Professional conduct without reserving any power of supersession to the federal court).  This reservation of power indicates that the District of New Mexico contemplated disagreement with

the Supreme Court of New Mexico and built a trapdoor that allows it to supersede the Supreme Court of New Mexico. The Supreme Court of New Mexico's interpretation of the local rules, therefore, does not bind the Court, because the Court is able to supersede the Supreme Court of New Mexico via order. <u>See</u> D.N.M. L.R. 83.9. The Court, therefore, joins other district courts that have reserved power to supersede their state supreme courts and, thus, have declined to permit state supreme court interpretations of the state's code of professional conduct to bind them. <u>See e.g.</u> <u>Cavender v. U.S. Xpress Enters., Inc.</u>, 191 F. Supp. 2d 962, 966 (E.D. Tenn. 2002)("As a federal court, the Court is not bound by state court or state attorney disciplinary board interpretations of provision of the Code of Professional Responsibility.").

Although New Mexico state law does not bind the Court, the Court finds the Supreme Court of New Mexico's law to be persuasive in ethics cases. <u>See</u> <u>Lajeunesse v. Sallee</u>, No. CIV 98-0416 MV/RLP, 1998 WL 36030259, at *1 (D.N.M. Oct. 27, 1998)(Vasquez, J.)(concluding that the Supreme Court of New Mexico's interpretation of the New Mexico Rules of Professional Conduct is "persuasive" authority). Because this District chose to follow the Supreme Court of New Mexico in adopting the New Mexico Rules of Professional Conduct, the Court may choose to follow the Supreme Court of New Mexico's interpretation of those rules. By following the Supreme Court of New Mexico's decisions, this Court would promote uniformity in the ethical practices of attorneys who practice both in state and federal courts, and minimize the headaches that occur from practicing in courts with differing ethical standards. The Court, however, will not follow the Supreme Court of New Mexico's interpretation of the rule when the harm that would result from following its interpretation outweighs uniformity's benefit or when federal law is developed enough to render inconsistency with federal law more problematic than an inconsistency with state law.

The Supreme Court has recognized that district courts need flexibility to manage their dockets and that, therefore, district courts should have discretion to stay proceedings. See Clinton v. Jones, 520 U.S. at 706. The Tenth Circuit has limited this discretion, however, to situations in which the movant's necessity outweighs a stay's "severe" effect on other parties' rights. Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484. At the hearing that the Court held on the Motion, the Commissioners conceded that they did not contend that Mr. Marks is misusing confidential information gained from his NMPRC experience. See Tr. at 9:12-15 (Amer)("[T]he [C]omission does not believe that Mr. Marks is using confidential information. That was not the reason for the disqualification."). The Commissioners stated that, instead, their concern is the appearance of impropriety. See Tr. 9:15-16 (Amer)("The disqualification is to maintain the public's trust in the federal courts and maintain a high regard for the legal profession."); Motion at 7-10 (stating their reasons why Mr. Marks should be disqualified without giving any specifics beyond the "appearance of impropriety"). After the Commissioners admitted that their "necessity" is limited to the appearance of impropriety, the Court concluded that Mr. Marks remaining on the case poses no risk of unfair benefit to Great Divide, and, therefore, the Court prioritized time-sensitive dispositive motions over the motion to disqualify. See Draft Transcript of Hearing at 11:6-8 (taken November 4, 2019)(Court)[9](explaining that the Court ruled on the other motions before the motion to disqualify so that, should it win, Great Divide could have the opportunity to receive the tax credits).

---

[9]The Court's citations to the transcripts of the October 2, 2019, and the November 4, 2019, hearings refer to the court reporter's original, unedited versions; any final transcripts may contain slightly different page and/or line numbers.

Moreover, the Court has managed its docket to accommodate the parties' timeline. See Draft Transcript of October Hearing at 20:6-16 (taken October 2, 2019)(Court)("Oct. 2 Tr.")(stating that the Court "rearranged things" to accommodate Great Divide's timeframe for applying for tax credits). The Court's docket is saturated. See Mike Gallagher, Heavy Caseloads, Judges' Vacancies Put NM Federal Court Underwater, Albuquerque J. (Sept. 21, 2019, 11:45 p.m.), https://www.abqjournal.com/1369388/heavy-caseloads-judges-vacancies-put-nm-federal-court-underwater.html (last visited Nov. 19, 2019)(describing the "historically bus[y]" District of New Mexico's increasing criminal caseload and decreased number of federal judges as a "dire" situation); Alicia A. Caldwell & Dan Frosch, Immigration Cases, Judicial Vacancies Tax New Mexico Courts, The Wall Street J. (Oct. 19, 2019, 10:00 a.m.) https://www.wsj.com/articles/immigration-cases-judicial-vacancies-tax-new-mexico-courts-11571493600 (last visited Nov. 19, 2019)(describing the District of New Mexico's docket as "crushing"); Judicial Emergencies, United States Courts (last updated Nov. 19, 2019) https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies (last visited Nov. 19, 2019)(identifying the three District of New Mexico vacancies as "judicial emergencies"). Moreover, the Court is untangling a case on its docket that has been called "perhaps the single largest and most complicated prosecution this district has ever seen." Colleen Heild, Prison Gang Leader, 2 Others Guilty, Albuquerque J. (March 12, 2018, 2:46 p.m.)(updated March 12, 2018, 10:33 p.m.) https://www.abqjournal.com/1145130/guilty-verdict-against-3-in-syndicato-gang-trial-in-las-cruces.html (last visited Nov. 19, 2019). The Court has recognized the time-sensitivity of this case, however, and accommodated the parties' timeline to the best of its ability. See Oct. 2 Tr. at 20:6-16 (Court). To provide actual relief to Great Divide, the Court knew that it needed to move with urgency. See Oct. 2 Tr. at 96:18-21 (Court)(stating that the Court would "try to

reorganize [its] work to try to give [the parties] a timely opinion" so the parties could "do what [they] need to do with it"). Allowing the Commissioners to throw a wrench into the timeline and hamper Great Divide's right to seek relief would render Great Divide losers regardless of the case's outcome. The Court rearranged its schedule to work on this case, but it could not put so much of its precious resources to work on the Motion to Dismiss, the Motion for Summary Judgement, and this Motion at the same time.

Furthermore, the Commissioners' reliance on the "appearance of impropriety" and the "appearance of evil" as reasons to disqualify Mr. Marks is misplaced. Motion 7-10 (citing Heyliger v. Collins, 2014 WL 910324; Allied Realty of St. Paul v. Exch. Nat'l Bank of Chi., 283 F.Supp. at 464) The Heyliger v. Collins excerpt the Commissioners cite for their "appearance of impropriety" language is based not on ABA Model Rule 1.11, but on the ABA Model Code of Professional Responsibility's Canon 9. See ABA Model Code of Prof. Responsibility, Canon 9 ("ABA Model Code")(stating that disqualification could be necessary to "avoid[] the appearance of impropriety"). The decision in the other case to which Commissioners cite, Allied Realty, was handed down in 1968, fifteen years before the ABA Model Rules replaced the Model Code and seventeen years before Minnesota adopted the Model Rules. See Alphabetical List of Jurisdictions Adopting Model Rules, ABA (updated March 28, 2018) https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_pr ofessional_conduct/alpha_list_state_adopting_model_rules/ (last visited Nov. 19, 2019). When the Model Rules replaced the Model Code in 1983, ABA Model Rule 1.11 eliminated the "appearance of impropriety" language. Waters v. Kemp, 845 F.2d 260, 265-66 (11th Cir. 1988)(explaining that cases applying the imputation standard were decided before the Model Rules

replaced the Model Code and eliminated the appearance of impropriety language).  ABA Model Code's Canon 9, therefore, provides no basis for disqualification in this case.

## III.    MR. MARKS' INVOLVEMENT WITH RULE 570 IS NOT INVOLVEMENT IN A "MATTER" UNDER RULE 16-111(A)(2).

Rule 16-111 defines matter as "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties."  Rule 16-111(E)(1) NMRA.  When a limiting clause follows a list of words or phrases, the last-antecedent rule of statutory interpretation suggests that the Court apply the limiting clause to only the immediately preceding word or phrase.  See Lockhart v. United States, 136 S. Ct. 958, 962 (2016)(citing Barnhart v. Thomas, 540 U.S. 20, 26 (2003); Black's Law Dictionary 1532-1533 (10th ed. 2014); A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 144 (2012).  This canon requires the Court to apply the key modifier, "specific party or parties" to its immediately preceding term, "other particular matters."  "[O]ther indicia of meaning," however, can rebut this canon.  Lockhart v. United States, 136 S. Ct. at 963 (quoting Barnhart v. Thomas, 540 U.S. at 26).  Rule 110-16 is a "simple and parallel" group of items "that readers are used to seeing listed together" "without unexpected internal modifiers or structure."  Lockhart v. United States, 136 S. Ct. at 963.  The list itself is one indicia of meaning that may overcome the presumptive canon.  Moreover, a statute must be read in context of the statutory structure.  See Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989).  Rule 110-16's comment states that  disqualification under rule 16-111(A)(2) is limited to "matters involving a specific party or parties, rather than extending disqualification to all substantive issues on which the lawyer worked," which indicates that the limitation extends to the list.  NMRA Rule 16-111 cmt. 4.  These additional indicia of meaning, therefore, rebut the

last-antecedent rule's presumption. The Court, therefore, uses the "series-qualifier canon," and applies "involving a specific party or parties," to all terms in the list. Black's Law Dictionary 1574 (10th ed. 2014). The Court concludes that "matters" under rule-16(A)(2) requires a proceeding involving a specific party or parties. The ABA Model Rules, after which the New Mexico rules are patterned, lend credence to the Court's definition and application of "matter." The Annotated ABA Rules state that "matter," "as defined by Rule 1.11(E)[,] does not include legislation, **rulemaking**, and other policy determinations." (emphasis added). The <u>Provision of Net Metering and Combined Rulemaking Cases</u> were rulemaking cases that do not involve specific parties. Because rule 16-111(A)(2) defines a "matter" to require specific parties, the rulemaking cases in which Mr. Marks was involved were not "matters" as rule 16-111(A)(2) defines that term. Rule 16-111(A)(2), therefore, is inapplicable in the present case.

Furthermore, because the matters[10] with which Mr. Marks was involved differ from the matter at issue in the present case, his participation in the previous matter does not merit disqualification. The matter in which Mr. Marks was involved as a public official must be the same as the "matter" in the present case for disqualification under rule 16-111(A)(2). The test for determining whether two matters are the same is a test about substance, and not about form. <u>See United States v. Villaspring Health Care Ctr., Inc.</u>, No. CIV. 3:11-43-DCR, 2011 WL 5330790, at *4 (E.D. Ky. Nov. 7, 2011)(Reeves, J.)(stating that, under the Kentucky Rules, "the court should 'consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed'"(quoting Ky. S. Ct. R. 3.130(1.11) cmt. 10)). To underscore the focus on

---

[10]Although the Court has found the rulemaking proceedings not to be "matters," the Court will continue to refer to them as "matters" during the analysis for the reader's ease.

substance over form, the Court notes that other federal courts have found that the scope of the attorney's work is more determinative than the matters' facts and parties. <u>See</u> <u>Green v. City of N.Y.</u>, CIV 10-8214 PKC, 2011 WL 2419864 (N.D. N.Y. June 7, 2011) at *2 (concluding that the determination whether the matters are the same "turns on the scope of the lawyer's work in the first matter, which may or may not have extended beyond the four-corners of the then pending action"); <u>Sec. Inv'r Prot. Corp. v. Vigman</u>, 587 F. Supp. 1358, 1365 (C.D. Cal. 1984)("'The same issue of fact involving the same parties and the same situation or conduct is the same matter . . . .[T]he same 'matter' [does not lack] the discrete, identifiable transaction or conduct involving a particular situation and specific parties.'"(quoting ABA Formal Opinion No. 342 (1975))(alterations in original)). The Court adopts the same substantive test, weighing the scope of the attorney's work in the first matter, the parties, the facts, and the time elapsed between the first and second matter. This test accords with the other federal courts' tests and aligns with rule 16-111's intent to minimize unfair advantage "by reason of access confidential government information about the client's adversary obtainable only through the lawyer's government service" while not putting a doorstop into the revolving door. NMRA Rule 16-111 cmt. 4.

Applying this test, the Court concludes that the matter at issue is not the same matter on which Mr. Marks worked as an NMPRC Commissioner. In the NMPRC rulemaking cases, rule 570.9 was not the subject. While rule 570.9 was reprinted in both <u>Provision of Net Metering</u> and Combined Rulemaking Cases, its reprinting does not elevate it beyond ancillary, because the entire rule was reprinted. A single provision in the first matter might disqualify an attorney from a second matter involving the entire rule. At least in this case, however, Mr. Marks' involvement with the entire rule in the first matter does not disqualify Mr. Marks from the second matter involving only a single provision. The single provision at issue does not encompass the entire rule. <u>See</u> <u>Reed v.</u>

<u>Astrue</u>, No. CIV. 09-824-SLR, 2011 WL 2112009, at *2 (D. Del. May 26, 2011)(Robinson, J.)(concluding that a lawyer who previously defended the Social Security Administration's denial of a plaintiff's claim is not disqualified from representing the plaintiff in a disability benefits case: "Given that claimants are permitted to come back . . . multiple times, and . . . records related to each attempt can (and usually do) include substantially all medical records ever presented to defendant," disqualifying the attorney functionally would preclude "attorneys of long standing . . . from representing repeat filers").  Moreover, the Court cannot soundly compare parties from the first matter to parties from the second matter, because the first matter has no parties.  Finally, as the Court details below, the scope of Mr. Marks' work in the first matter is limited and, thus, not worthy of disqualification.

## IV.   MR. MARKS WAS PERSONALLY, BUT NOT SUBSTANTIALLY, INVOLVED WITH THE RULEMAKING PROCEEDINGS.

Rule 16-111(A)(2) requires that a former government attorney have "personally and substantially participated" in the previous matter to merit disqualification.  Rule 16-111(A)(2) NMRA.   "Personally and substantially" derives from the Ethics in Government Act of 1978, 18 U.S.C. § 207, which elaborates that "personal and substantial" participation can happen "through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or other such action."   The rule's plain language requires the record to show that, at some point and in some manner, the attorney was involved in the matter as an individual, and not as part of a larger group.  <u>See</u> <u>Richards v. Lewis</u>, CIV 05-0069, 2005 WL 2645001, at *3. (D.V.I. Oct. 14, 2005)(Bartle, J.)(concluding that the presentation of facts is required for a "personal and substantial involvement" determination).  In this case, the Commissioners have presented evidence of Mr. Marks' personal involvement: his signatures on the rulemaking proceedings' final orders

and his role as a hearing officer in NOPR for <u>Provision of Net Metering</u>. Federal law on the "personally involved" requirement is underdeveloped. Many cases dispose of both the "personally" and "substantially" determinations in a single brushstroke. The most relevant case is <u>United States v. Dancy</u>, CR 3:08-189, 2008 WL 4329414 (E.D. Va. Sept. 16, 2008)(Dohnal, M.J.). In that case, the Honorable Dennis W. Dohnal, United States Magistrate Judge for the United States District Court for the Eastern District of Virginia, granted a motion to reconsider and vacate the order disqualifying defense counsel, because he found that, while she was personally involved in the investigation at issue, she was not substantially involved. <u>See</u> <u>United States v. Dancy</u>, 2008 WL 4329414, at *1. In that case, Magistrate Judge Dohnal declared her to be "obviously personally involved," because she permitted subpoenas to be issued under her authority. <u>United States v. Dancy</u>, 2008 WL 4329414, at *1. In this case, Mr. Marks was involved in the rulemaking proceedings, because he permitted the final orders to be issued under his authority, with his signature. <u>See</u> Motion ¶ 5, at 6. The Court concludes that a signature, demarcating the individual attorney's participation, is sufficient to deem the attorney personally involved. Mr. Marks, thus, was "personally involved" in the rulemaking proceedings under rule 16-111(A)(2).

Under rule 16-111(A)(2), personal involvement without more is insufficient for disqualification in a matter. The attorney must be "substantially involved" in the matter to be disqualified. NMRA Rule 16-111(A)(2). As noted above, courts have not delineated between personal and substantial involvement. To flesh out the test, the Court first looks to the text's plain language. "Substantial" is defined as "having great meaning or lasting effect." "Substantial," Merriam Webster, available at https://www.merriam-webster.com/dictionary/substantial (last visited November 15, 2019). While some of the vehicles of participation that the Ethics of Government Act lists seem perfunctory, <u>e.g.</u> "approval," "disapproval," the adjective "substantial"

means that the ways of participating must have significance to the matter. In Re Sofaer, 728 A.2d 625, 643 (D.C. Ct. Ap. 1999)("[A] 'single act of approving or participating in a critical step may be substantial' if the act is of significant to the matter.")(quoting 5 C.F.R. § 2637.201(d)(1)). While signing a final order, therefore, may appear significant, the act must be more than ministerial authorization. See In Re Sofaer, 728 A.2d at 625 (concluding that an act must require more than "perfunctory involvement"). The Commissioners do not point to anything on the record that indicates that signing the final order was more than "limited, pro forma, and ultimately nominal" involvement. Richards v. Lewis, CIV 05-0069, 2005 WL 2645001, at *4 (concluding that, despite the attorney signing routine general denial on the Commissioner's behalf as an assistant attorney general, her involvement in the plaintiff's related claim was insufficient to merit disqualification).

That Mr. Marks was personally involved as a Commissioner, and not as an attorney, makes no difference to the Court's conclusion. Rule 16-111(A)(2) applies to lawyers who have "formerly served as [] public officer[s] or employee[s] of the government." NMRA Rule 16-111(A)(2). Other federal courts that, like New Mexico, have adopted the ABA Model Rules, have not differentiated in their analyses between former non-attorney government employees and former attorney government employees. See Fillippi v. Elmont Union Free Sch. Dist. Bd. of Educ., 722 F. Supp. 2d 295, 313 (E.D.N.Y. 2010)(applying the disqualification analysis to an attorney whose previous government position was vice president of a school board). While rule 1.9 is limited to adverse representation, and, thus, former attorneys, rule 1.11 encompasses all former government employees, because all government employees may have access to confidential information that could be used for the benefit of a future client.

Similarly, the Commissioners argue that the Court should disqualify Mr. Marks' because of his role as a hearing officer, see Motion ¶ 5, at 5, but they do not explain how his role indicates

substantial involvement with rule 570.9. It is difficult to imagine how acting as a hearing officer would have a "meaningful, long-lasting effect" on rule 570.9, and the Commissioners do not enlighten the Court as to how this effect might occur. Instead, the Commissioners argue that the 2006 and 2007 rulemaking proceedings "specifically adopted Rule 570.9 with the same language as it exists today regarding interconnection and obligation to purchase." Motion at 5 n.2. This statement is incomplete -- the rulemaking proceedings did not specifically adopt rule 570.9; rather, the Commissioners admit, the entire rule was replaced, and the only language altered was the language that was at issue in the rulemaking proceedings. See Tr. at 8:23-9:5 (Amer). Moreover, the Commissioners do not point to anything that suggests that rule 570.9's language was discussed in either of these rulemaking proceedings; the Commissioners concede that there is nothing to indicate that rule 570.9 was considered during these proceedings. See Tr. at 41:16-42:7 (Court, Amer). The Commissioners counter that, because rule 570.9 is the key to the rest of rule 570, Mr. Marks, as an attorney, would have considered the key provision and read it in conjunction with the rest of the statute when deciding on amendments. See Tr. at 38:13-18 (Amer); id. at 43:1-6 (Amer). Speculation is an insufficient basis for disqualification. There are other explanations for Mr. Marks not raising concerns with rule 570.9, including, as the Court said at the hearing, time management.[11] It is plausible that Mr. Marks, when deciding his priorities, decided not to reexamine part of the rule that was not at issue and instead focused on the parts of the rule that were at issue. Silence and speculation do not convince the Court, so the Court concludes that Mr. Marks was not substantially involved in rule 570.9.

---

[11]Although Great Divide raised another plausible explanation at the hearing, Great Divide did not, as the Court suggested, supplement the record with support for its explanation. See Tr. at 49:5-7 (Court).

**IT IS ORDERED** that (i) the Defendants' Motion to Disqualify, filed March 1, 2019

(Doc. 18); and (ii) the Defendants' Amended Motion to Disqualify Jason Marks, Esq and Motion

to Stay, filed March 6, 2019 (Doc. 25), are denied.


_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Jason A. Marks
Jason Marks Law, LLC
Albuquerque, New Mexico

--and--

Jonathon Guy
Adam Wenner
Cory Lankford
Orrick, Herrington & Sutcliff, LLP
Washington, D.C.

*Attorneys for the Plaintiffs*

Judith E. Amer
New Mexico Public Regulation Commission
Santa Fe, New Mexico

*Attorney for the Defendants Theresa Becenti Aguilar, Cynthia Hall, Jefferson Byrd, Valerie*
   *Espinoza, and Stephen Fischmann*

Ron Moss
Winstead PC
Austin, Texas

--and--

Carol A. Clifford
Jerry Todd Wertheim
Jones, Snead, Wertheim & Clifford, P.A.
Santa Fe, New Mexico

*Attorneys for Intervenor-Defendant El Paso Electric Company*

Will DuBois
Zoe Elizabeth Lees
Xcel Energy Service, Inc.
Austin, Texas

*Attorneys for Intervenor-Defendant Southwest Public Service Company*